## UNITED STATES *v.* FLATT & CO. (No. 1292).[1]

CRUDE COCO FIBERS, PROCESSED.

The appraiser found the merchandise to be partly manufactured coco fibers and there is nothing in the record to contradict his finding. The fibers of the importation had been subjected to a certain process that fitted them as materials for use in the manufacture of brushes. They were not entitled to free entry.

United States Court of Customs Appeals, April 7, 1914.

APPEAL from Board of United States General Appraisers, Abstract 33808 (T. D. 33789).

[Reversed.]

*William L. Wemple*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel); *Samuel Isenschmid*, special attorney, on the brief), for the United States.

*Walter Evans Hampton* for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise involved in the present case consists of coco or cacao fiber such as is used in the manufacture of brushes.

The importation was invoiced as "raw coco fiber," and free entry was claimed for it under the provision for coco or cacao fibers contained in paragraph 540 of the tariff act of 1909. The appraiser, however, reported the article to be "coco fiber, dressed, cut into uniform lengths and bunched, ready for use in the manufacture of brushes." Return for duty was made as a nonenumerated

article, partly manufactured, dutiable at 20 per cent ad valorem, under paragraph 480 of the act, and duty was assessed in accordance with this return.

The importers duly filed their protest against the assessment, presenting their claims for the free entry of the merchandise in the following terms:

The ground of objection under the tariff act of August 5, 1909, is that said merchandise should be free of duty as coco fiber, crude, under paragraph 540.

The protest was submitted to the Board of General Appraisers, and the board sustained the same in the following decision:

The appraiser reports that the merchandise in this case consists of fiber cut into uniform lengths and bunched. Duty was assessed at 20 per cent under paragraph 480 of the tariff act of 1909, and the merchandise is claimed to be free as coco fiber, crude, under paragraph 540. Following the decision of this board in Osborne Manufaturing Co.'s case, Abstract 30026 (T. D. 32858), the protest is sustained and the collector directed to reliquidate the entry admitting the merchandise free of duty.

For convenience of reference at this point the following copy is given of the abstract decision referred to in the foregoing opinion:

Bass fiber cut into specified lengths, assessed under paragraph 480, tariff act of 1909, held to be crude, free of duty (par. 630).

The Government appealed from the decision of the board reversing the collector's assessment, and the question is thus presented to the court, whether upon the present record the merchandise in question is entitled to free entry under paragraph 540 of the tariff act of 1909. The following is a copy of that paragraph:

(Free list.)
540. Cocoa, or cacao, crude, and fiber, leaves, and shells of.

As appears from the foregoing statement, both of the parties to this issue and also the board construe paragraph 540, *supra*, to grant free entry to crude coco fiber only. Upon this construction of the paragraph the importers invoiced and entered the present article under the description of "raw coco fiber," claiming its free entry as such. Upon the same construction the collector refused free entry to the merchandise, the appraiser having reported that the same was not "raw coco fiber," but was "dressed, cut into uniform lengths, and bunched, ready for use in the manufacture of brushes." Acting upon the same construction of the paragraph the board held the article to be free as coco fiber, crude, basing this conclusion upon a similar decision relating to bass fiber. This court for the purposes of this case accepts the same construction of the paragraph in question, and therefore the only question in the case is whether upon the present record it sufficiently appears that the present article is crude coco fiber.

There is no testimony submitted by either party at the trial before the board, therefore the character of the merchandise in question appears only from the official sample and the report of the appraiser.

The official sample consists of a small bundle of coco fibers of exactly even lengths held together by a band of heavy paper. As above stated, the appraiser reported these to be "coco fiber, dressed, cut into uniform lengths, and bunched ready for use in the manufacture of brushes." The report of the appraiser is, of course, presumed in the first instance to be correct, and an inspection of the official sample does not lead the court to doubt the correctness of the same. It must therefore be accepted that the present merchandise does not consist of coco fibers in the condition in which they first attained to that name and character, but fibers which, after they had already attained to the name and character of coco fibers, were subjected to a treatment which fitted and appropriated them to a special industrial use, namely, the manufacture of brushes. Just what this treatment was does not appear from the record. It is simply recited by the appraiser that the fibers were "dressed," as well as cut and bunched; but this statement fairly implies that a substantial change was made in the article from its original condition as coco fibers. This is evidently the meaning intended to be conveyed by the appraiser, for the fact is recited as the basis for the proposed assessment of the merchandise as partly manufactured coco fibers, thus denying them admission as crude coco fibers only.

In the entire absence of testimony tending either to contradict or explain the appraiser's report, the court is constrained to accept the foregoing interpretation of it as conclusive of the issue. The merchandise at bar appears, therefore, to be not crude coco fibers or coco fibers only, but such fibers after being subjected to a certain process which has fitted and appropriated them as materials for the manufacture of brushes, and in this view the collector's assessment should be sustained.

The decision of the board is therefore *reversed*.