CONE *et al. v.* UNITED STATES (No. 1457).[1]

1. GRASSES CUT TO LENGTHS.

The report of the appraiser that the grasses of the importation were cut to lengths to be used in the manufacture of brushes ready for use is supported by the record.

2. GRASSES, DRESSED.

The material is prepared for a definite use and is ready at hand for its ultimate use in the manufacture of specified articles and according to the lexicons these facts make the material "dressed." It is held this conforms to, the statute and that the merchandise was properly assessed under paragraph 480, act of 1909.— United States *v.* Continental Color & Chemical Co. (2 Ct. Cust. Appls, 165; T. D. 31679), United States *v.* Danker & Marston (2 Ct. Cust. Appls, 522; T. D. 32251), Schoenemann *v.* United States (119 Fed., 584) distinguished.

---

[1] Reported in T. D. 35149 (28 Treas. Dec., 228).

United States Court of Customs Appeals, January 15, 1915.

APPEAL from Board of United States General Appraisers, Abstract 36238 (T. D. 34677).
  [Affirmed.]
  *Allan R. Brown* for appellants.
  *Bert Hanson*, Assistant Attorney General (*William A. Robertson*, special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The merchandise in this case consists of vegetable fibers which are claimed to be free of duty under paragraph 578 of the act of 1909. The assessment was under paragraph 480 for nonenumerated manufactured articles. The report of the appraiser was that "the merchandise consists of piassava, a vegetable fiber, dyed and dressed, used in the manufacture of brushes, returned for duty. as a nonenumerated partially manufactured article." In answer to another protest, the merchandise was referred to as "vegetable fiber cut into uniform lengths, dressed and dyed and bunched, used in the manufacture of brushes." The samples all present a similar appearance, and are probably of the same material. The testimony of a witness introduced by the importer is to the effect that the articles are. cut to specified length and also dyed, and that they are sorted and bunched according to certain lengths. The importer states his contention to be that cutting, sorting, and bunching according to lengths are not manufacturing processes. As to dyeing, it is further contended that it is immaterial whether the facts in the record as to the presence or absence of coloring matter establish that the fibers be colored or dyed, since paragraph 578 says nothing about dyeing, and that the presence of an infinitesimal amount of unidentifiable coloring matter present in a portion of the samples does not indicate that the fibers are dyed, and does not justify the conclusion that the fibers are dressed or manufactured.

The correctness of the appraiser's report does not appear to be seriously questioned. An examination of the exhibits would seem to support the report. The importer introduced an illustrative exhibit, and stated, "I testify that all the fibers in these 14 cases are identical with this sample." This sample clearly demonstrates that the fiber had been cut to lengths for use in the manufacture of brooms. It is true the importer also testified that if manufactured into brooms and brushes it has to be cut off—trimmed—after it is put into the handle. But the evidence shows that while some of the exhibits show that it has not been cut to exact lengths, in some of the others in evidence it is often cut more accurately to certain lengths than in the illustrative exhibit referred to. It may fairly be said, therefore, that the report of the appraiser that the grasses

were cut to lengths to be used in the manufacture of brushes and bunched ready for use is supported by the record.

That a very large proportion of this material has also been dyed is fairly established by the testimony of the chemist. But as a portion is not so dyed, the question is before the court for determination as to whether the selection of these grasses, cut to lengths and bunched ready for use in the manufacture of an article, is a dressing or manufacture within the meaning of the paragraph in question. This paragraph reads as follows:

578. Grasses and fibers: Istle or Tampico fiber, jute, jute butts, manila, sisal grass, sunn, and all other textile grasses or fibrous vegetable substances, not dressed or manufactured in any manner, and not specially provided for in this section.

As stated in the opinion of the board in this case, there is some conflict in the decisions of the board on merchandise that is, if not identical, very similar to that under consideration. This is explained by the fact that records are often incomplete. But we have here presented the question as to whether such treatment as is shown in this case—namely, cutting, sorting, and packing in bundles ready for ultimate use in the manufacture of brushes or brooms—is a dressing or manufacture within the meaning of this paragraph.

We had before us similar goods in United States *v.* Flatt (5 Ct. Cust. Appls., 210; T. D. 34379). That case dealt with the subject of cocoa fiber, and we had under consideration paragraph 540 of the free list for "cocoa, or cacao, crude, and fiber, leaves, and shells of." The appraiser reported the article to be "cocoa fiber, dressed, cut into uniform lengths and bunched, ready for use in the manufacture of brushes." This case was determined upon the report of the appraiser, but as no evidence appeared to the contrary, it was held that the board was bound to follow the report of the appraiser. It is not therefore an authority for or against the decision in the present case.

It is to be noted, however, that there is a distinction between the paragraph there considered and the one here under consideration, and the first inquiry is whether these goods are dressed within the meaning of this paragraph. The word "dress" or "dressed" as applied to such articles must relate to some form of preparation. The question as to the extent of that preparation is the one for solution here.

In the New English Dictionary (vol. 3) "dress" is defined as follows:

1. To make straight or right; to bring into proper order; to array, make ready, prepare, tend. * * * 5. To make ready or prepare for any purpose; to order, arrange, draw up.

In the Standard Dictionary:

5. (3) To reduce to proper shape for use. * * *

In the Century Dictionary:

5. (c) To make fit for the purpose intended by some suitable process, as, to dress beef for market: to dress skins; to dress flax or hemp.

In Webster's New International Dictionary:

1. To make or set straight or right; * * *. 2. To put in good order; to make ready: to prepare for use or service; * * *.

We are convinced that the treatment to which this material has been subjected brings it well within these definitions. The material is prepared for a definite use, and is ready at hand for its ultimate use in the manufacture of specified articles.

While the word "dressed" has not been construed often, the case *In re* Robson, G. A. 5520 (T. D. 24860) would appear to be in point. The merchandise is there described as Bahia piassava and Para piassava, and the report by the local appraisers was:

In this case it is not crude or unmanufactured (in which condition it is generally sold in large bundles of irregular lengths), but has been assorted or dressed, and after wards cut into uniform lengths of 6 inches and bunched, in which shape it is prepared for brush-makers' use. It being therefore partially manufactured and not specially provided for, it was, in our opinion, properly returned under section 6.

It was there held that the merchandise was found to be similar in condition to kittul fiber, covered by *In re* Wilkens (T. D. 29773) and affirmed in Wilkens · v. United States (84 Fed., 152). The opinion in the case T. D. 24860 appears to have been based upon the report of the appraiser, which evidently treats "assorted" and "bunched" as synonymous with "dressed." See also *In re* Harvey, G. A. 3397 (T. D. 16969).

The cases cited by the importer to show that the sorting or bundling of goods does not make a material manufactured do not meet the issue here. Without affirming or denying the contention that such process is not in any sense a manufacture, it is enough for the purpose of this case to find that that process constitutes a dressing.

It is suggested in the brief of counsel that this is a crude material for the uses to which it is to be put, and cases are cited to the point that an article may be a crude material if in a crude state in relation to the use to which it is to be put. Two of our own decisions are cited—the case of United States v. Continental Color & Chemical Co. (2 Ct. Cust. Appls., 165; T. D. 31679) and United States v. Danker & Marston (2 Ct. Cust. Appls., 522; T. D. 32251). These cases are distinguishable from the instant case on like grounds. In each of the cases the provision construed was "articles in a crude state used in dyeing or tanning * * *." There was no provision corresponding to the clause of the statute here involved, which excludes "articles dressed or manufactured in any manner." The case therefore dealt with the word "crude." It was held that this term might include an article the result of manufacture where it appeared that

such article was unfit for the purpose intended, namely, dyeing or tanning, in its state as imported, but must be further submitted to elaborate processes before being adapted to such intended use. It may be noted that the case of Fenton *v.* United States (1 Ct. Cust. Appls., 529; T. D. 31546) illustrates the true distinction between crude articles and a manufacture of such material.

It is difficult to see how the principle invoked aids the importer. The article here is dressed for its ultimate use and it is not a crude material for the use to which it is to be put in the sense that it requires any further treatment, as the testimony of the importer shows that the most that is to be done in the way of trimming this material is to cut off the ends after it has been placed in the handle of the broom or brush. Indeed, it would seem impossible to fit it more completely than is done in the case of the most finished of these products.

Reliance is placed upon the case of Salomon *v.* United States (2 Ct. Cust. Appls., 431; T. D. 32196). That case is clearly distinguishable from the present. The merchandise was there described as crude jute waste, so called, which consisted of the broken fibers of undressed raw jute which are rejected by the carding machine in the first process of manufacture to which undressed jute is subjected. The evidence disclosed that in carding raw jute the carding machine picks up the long filaments of the jute and that the short fibers and those which are inferior are rejected by the pins of the machine. This rejected substance was the substance there dealt with. It was said:

It is inferior to the parent substance, however, in quality. But the evidence discloses that it may be devoted to the same uses to which the substance resulting from the first carding is devoted.

It further appeared that before it could be put to the use of spinning it must again be recarded and the product of this recarding is that which is used in spinning.

As to the question whether it would be dressed, it was said:

The evidence discloses that the first process of carding is not with the purpose of getting this substance. The carder does not desire to get any. But it comes about from the presence of inferior fibers. It is a by-product and not the substance sought. * * * But what is more significant is the fact that before it can be devoted to the same purpose that the superior quality is, namely, spinning, it must be subjected to a new process of carding and treated in precisely the same manner that the native substance is required to be treated.

Not so in the present case. The imported merchandise here is ready for its use in the manufacture of brooms or brushes.

Importer's counsel also relies upon the sea-shell cases, citing Schoenemann *v.* United States (119 Fed., 584). In that case the court was dealing with a provision for free entry of "shells not sawed, cut, polished, or otherwise manufactured, or advanced in value from the

natural state." The shells had been washed with water and chloride of lime, and they were held to be entitled to free entry notwithstanding. It was said:

Sea shells are the hard, organized substances forming the exterior covering and protection of certain marine animals, and these hard, bony coverings are not changed from their natural state by having these animals and the adventitious and foreign matter clinging to them removed. They are no part of the shell, and the natural state of the shell remains after this removal takes place. It would be as reasonable to say that the natural state of the shell existed only when the marine animal which it contained and protected was present as to say that there was a change from the natural state wrought by cleansing it from foreign substances which were no part of it.

It is obvious that this case is not an authority upon the question here discussed, but had the statute there under consideration, instead of restricting shells to those "not sawed, cut, polished, or otherwise manufactured," included the words "or dressed," quite a different question would have been presented for the court's consideration.

We think it should be held in the present case that these articles, prepared as they are, are dressed, within the meaning of the statute, and that the decision of the board should be *affirmed*.