UNITED STATES v. OSBORN MANUFACTURING Co. *et al.* (No. 1512).[1]

BASS FIBER FOR BROOMS.

This bass fiber has been subjected to a process that fits it for a definite use and has been advanced, accordingly, from a crude state to that of a manufactured article. It was not entitled to free entry under the tariff act of 1909.

United States Court of Customs Appeals, May 24, 1915.

APPEAL from Board of United States General Appraisers, Abstract 37094 (T. D. 35020).

[Reversed.]

*Bert Hanson*, Assistant Attorney General (*Robert Hardison*, special attorney, on the brief), for the United States.

Submitted on record by appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

A vegetable fiber, known as African bass fiber, imported at Cleveland, Ohio, and classified by the collector of customs as a nonenumerated manufactured article was assessed for duty at 20 per cent ad valorem under the provisions of paragraph 480 of the tariff act of 1909, which paragraph reads as follows:

480. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles, not enumerated or provided for in this section, a duty of ten per centum ad valorem, and on all articles manufactured, in whole or in part, not provided for in this section, a duty of twenty per centum ad valorem.

[1] Reported in T. D. 35504 (28 Treas. Dec., 1009).

The importers protested that the merchandise was not a manufactured article, but that it was a fibrous vegetable substance not dressed or manufactured in any manner and therefore entitled to free entry under the provisions of paragraph 578 of the free list of said act, which is as follows:

(Free list.) That on and after the day following the passage of this act, except as otherwise specially provided for in this act, the articles mentioned in the following paragraphs shall, when imported into the United States, * * * be exempt from duty: * * *.

578. Grasses and fibers: Istle or Tampico fiber, jute, jute butts, manila, sisal grass, sunn, and all other textile grasses or fibrous vegetable substances, not dressed or manufactured in any manner, and not specially provided for in this section.

The Board of General Appraisers sustained the protest on the ground that nothing had been done to the fiber except to cut it into uniform lengths and make it up into bundles. From the decision of the board the Government appealed and now contends in effect that the decision of the board was against the evidence, which showed that the fiber had been manufactured. The importers made no appearance on the oral argument of the appeal and filed no brief in support of the contention made by them on the hearing before the board. At the hearing the importers established by competent evidence that the merchandise in controversy was identically the same as that involved in protest No. 615029 and submitted to the board on testimony taken at Cleveland on July 2, 1912. The testimony so taken on protest No. 615029 was therefore introduced as evidence and made a part of the record in the pending controversy.

From the record as made up it appears without contradiction that the importation under consideration is bass fiber, which is originally cut into crude, long, rough lengths and shipped to London from Africa or the island of Ceylon. In London the fiber is sorted by common laborers and cut into lengths suitable for the manufacture of street-cleaning brooms. The lengths into which the fiber is cut vary with the size of the broom for which the fiber is intended, but once cut into such lengths it is ready to be made up into a broom of a given size, and is then gathered into bundles and bales for shipment. In order that the fiber may be more easily handled in making the broom it is softened by treating it with hot water or live steam, but apart from that it is subjected to no other treatment until it takes the form of a broom. After the fiber has been put into the broom the ends are trimmed or cut "so as to even off the goods."

The testimony of F. G. Smith, introduced on behalf of the importers, makes it perfectly clear that the fiber as harvested is not fit for the manufacture of brooms. He said that it was necessary to cut the fiber to proper lengths for the different sizes of brooms, and that it would not be economical to use the fiber in its cruder state.

The case as made out by the importers themselves establishes, we think, that the material under consideration has been subjected to a process which fits it for a definite use and sets it apart for a particular purpose, and from that we conclude that it has been advanced from a crude state to that of a manufactured material. Fenton v. United States (1 Ct. Cust. Appls., 529; T. D. 31546).

As we see it, the merchandise here involved is a dressed or manufactured fibrous vegetable substance, and the case falls directly within the rule and principle laid down in the opinion of Montgomery, Presiding Judge, speaking for the court in Cone v. United States (5 Ct. Cust. Appls., 491; T. D. 35149).

The decision of the Board of General Appraisers is therefore *reversed*.