UNITED STATES *v.* C. J. TOWER & SONS (No. 3169)[1]

United States Court of Customs and Patent Appeals, June 11, 1929

*Charles D. Lawrence,* Assistant Attorney General (*Ralph Folks,* special attorney, of counsel), for the United States.

*Allan R. Brown* for appellee.

[Oral argument May 6, 1929, by Mr. Lawrence and Mr. Brown]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, and GARRETT, Associate Judges[2]

GRAHAM, Presiding Judge, delivered the opinion of the court:

A large number of entries of merchandise invoiced as ground shavings in bulk were made by appellee at the port of Niagara Falls at various dates from November 30, 1926, to March 23, 1927. These

---

[1] T. D. 43427.

[2] LENROOT, Judge, did not participate in this decision, the case having been argued before he took his seat.

were each classified by the collector under paragraph 410 of the Tariff Act of 1922 at 33⅓ per centum ad valorem. The importer protested in each case, claiming the goods to be dutiable as waste under paragraph 1457, or, alternatively, as a not enumerated manufactured or unmanufactured article under paragraph 1459, or as wood, unmanufactured, under paragraph 403 of said act. On a hearing upon said protest before the Customs Court, the said protest was sustained and the goods held to be dutiable at 10 per centum ad valorem as waste under said paragraph 1457. From the resulting judgment the Government has appealed.

The record discloses that the merchandise is made of white-pine shavings, intermingled with a small amount of ordinary sawdust. This material is put through a grinding machine and is thus reduced to a form much resembling ordinary coarse sawdust. But one witness testified. He stated that the raw material was thus treated in order to facilitate its transportation. The wood shavings, if imported, must be compressed into bales which would entail an expense of approximately $2.25 a ton. When the shavings were reduced to sawdust by grinding, they were blown into the cars for transportation and could be handled in this way for 75 cents a ton. He testified that the material, after being brought into the country, was ground into a fine flour which is known as wood flour and which is used for various commercial purposes, notably as a surgical dressing and in the manufacture of linoleum. He further stated that the grinding did not advance the raw material for the purpose of making wood flour, but was a detriment; that the flour was more easily made, and with less expense, by the use of the shavings than by the use of the sawdust form; that the latter form clogged the wood-flour machines and slowed up the process; that there was no other object in treating the wood shavings except to facilitate transportation; and that the wood shavings were worth more, and brought a higher price on the market, than the sawdust form. No evidence of any kind was introduced by the Government to meet this proof except the uncorroborated report of the appraiser.

We understand, from the oral argument of counsel for the Government, that it is not seriously maintained that the classification by the collector of this merchandise under said paragraph 410 is correct. But whatever the argument may be, it is evident that it can not be there classified. It can not be said to be wood flour, for wood flour is described in the record and illustrated by the official illustrative sample as a finely powdered, dustlike product. Nor can it be said to be a manufacture of wood. To constitute a manufacture of wood, the original material, shavings, and sawdust must have been converted by a manufacturing process, or manufacturing processes, into an article which has attained a distinctive name, character, or use differing from that originally possessed by the shavings and sawdust.

*Ringk & Co.* v. *United States*, 16 Ct. Cust. Appls. 132, T. D. 42769; *United States* v. *Shade*, 16 Ct. Cust. Appls. 366, T. D. 43092; *Fujii Shoten* v. *United States*, 17 C. C. P. A. 79, T. D. 43362. The imported material has no such distinctive name, character, or use, and is therefore not a manufacture of wood.

The claim of appellee under said paragraph 403 is not insisted upon and may be considered as abandoned.

The remaining issue is, therefore, whether the goods shall be held dutiable as waste, under said paragraph 1457, or as a not enumerated, manufactured or unmanufactured article, under said paragraph 1459. Of course, if it is waste, it is specially enumerated and could not be considered as not enumerated.

The two competitive paragraphs are as follows:

PAR. 1457. Waste, not specially provided for, 10 per centum ad valorem.

PAR. 1459. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

It seems to be conceded that the original material—namely, white-pine shavings and sawdust—out of which the imported merchandise was made, was waste. Unquestionably it fell within the definition of waste as laid down by the authorities. *United States* v. *Salomon*, 1 Ct. Cust. Appls. 246, T. D. 31277; *Salomon Bros. & Co.* v. *United States*, 2 Ct. Cust. Appls. 431, T. D. 32196; *Ash* v. *United States*, 16 Ct. Cust. Appls. 225, T. D. 42838. Has its subsequent processing removed it from this classification, or is it still waste?

The record shows, as has been already noted, that the grinding to which this material has been subjected does not advance it toward the manufacture of wood flour. It appears that after such grinding the material is further removed from wood flour than it was in the beginning. It therefore can not be said to be wood flour, partly manufactured. In this vital respect the case differs from those cited by the Government. In *American Smelting & Refining Co.* v. *United States*, 12 Ct. Cust. Appls. 212, T. D. 40226, the imported material was arsenical flue dust, a product of lead-smelting operations. The raw ore was smelted for its metals, and the flue dust was recaptured for subsequent smelting operations to recover arsenious acid. As the process was a distinct advance toward the manufacture of arsenious acid, it was held to be not a waste, but a partly manufactured article.

In *United States* v. *Swift & Co.*, 14 Ct. Cust. Appls. 222, T. D. 41706, ground tankage was in issue and was claimed, *inter alias*, to be dutiable as waste. It was shown, however, that the material was advanced toward its ultimate use as a feed. It was therefore held to be a partly manufactured article.

This record discloses that the only object of the grinding of the imported material was for convenience and economy in packing and shipping and that no other purpose was accomplished. This brings the case squarely within the rule announced by us in several cases.

*Aetna Explosives Co.* v. *United States,* 9 Ct. Cust. Appls. 298, T. D. 38238, affirmed in 256 U. S. 402, dealt with a mixture of nitric and sulphuric acids, shipped in tank cars. A small amount of sulphuric acid was added to the nitric acid for safety in transportation and accomplished no other purpose. The court held that the importation was one of nitric acid and not of mixed acids, and said in part:

> The mixing of this minimum amount of sulphuric acid should be treated as a means of and part of the shipment, and as an act as essential in the importation of nitric acid as would have been the proper packing of glassware or other goods designed for shipment by rail. It was an act analogous to the packing of goods for shipment.

In *Lackawanna Steel Co.* v. *United States,* 10 Ct. Cust. Appls. 93, T. D. 38359, crushed stone was imported. It was classified under paragraph 81 of the Tariff Act of October 3, 1913, as "earthy or mineral substances wholly or partly manufactured," and was claimed to be free as "limestone, unmanufactured." The evidence disclosed that the crushing was done for convenience in transportation only and that the stone must be recrushed before it could be used. It was held to be free of duty as limestone.

In *United States* v. *American Chicle Co.,* 10 Ct. Cust. Appls. 98, T. D. 38360, chicle, bruised and hammered from larger to smaller pieces for convenience in transportation, was imported. It was shown that this crushing process advanced the material in only an immaterial way. It was held to be crude chicle.

A similar case was *Gudewill & Bucknall* v. *United States,* 142 Fed. 214. Cork bark ground into small pieces for convenience in handling, but which must be further ground before being fit for its ultimate use, was held by the Board of General Appraisers to be a manufacture of cork. The Circuit Court of the Southern District of New York reversed the decision of the board, and held the material to be properly dutiable as waste.

In view of the condition of this record and the plain trend of legal authority, the judgment of the court below is *affirmed.*