AMERICAN PUSH BROOM & BRUSH CO. *v.* UNITED STATES (No. 4045) [1]

[1] T. D. 49391.

United States Court of Customs and Patent Appeals, January 24, 1938

Lawrence & Tuttle (*Frank L. Lawrence* of counsel) for appellant.
*Joseph R. Jackson*, Assistant Attorney General (*Joseph F. Donohue*, special attorney, of counsel) for the United States.

[Oral argument December 9, 1937, by Mr. Lawrence and Mr. Donohue]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD and LENROOT, Associate Judges

GARRETT, Presiding Judge, delivered the opinion of the court:

Importer has here appealed from the judgment of the United States Customs Court, Third Division, overruling its protest against the classification and duty assessment by the Collector of Customs at the port of San Francisco, Calif., of certain merchandise consisting of ribs of palm leaves, hereinafter more particularly described.

The collector's classification was under the latter portion of paragraph 1558 of the Tariff Act of 1930 with duty assessment at 20 per centum ad valorem, the merchandise being held by him to be "articles manufactured, in whole or in part, not specially provided for."

The protest contains a number of alternative claims. In the brief and oral presentation before us, argument was limited to the claims made under the first part of paragraph 1558 ("raw or unmanufactured articles not enumerated or provided for"), paragraph 1684, paragraph 1722 and paragraph 1806, the last three being free list paragraphs. The assignments of error include an assignment relating to a claim under paragraph 1674 (providing for certain palm-leaf) but no argument was presented upon this point, and the claim is regarded as abandoned.

Paragraphs 1558, 1684, 1722, and 1806 read:

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

PAR. 1684. Grasses and fibers: Henequen, sisal, manila, jute, jute butts, kapok, istle or Tampico fiber, New Zealand fiber, sunn, maguey, ramie or China grass, raffia, pulu, and all other textile grasses or fibrous vegetable substances, not dressed or manufactured in any manner, and not specially provided for.

PAR. 1722. Moss, seaweeds, and vegetable substances, crude or unmanufactured, not specially provided for.

PAR. 1806. Woods: Sticks of partridge, hair wood, pimento, orange, myrtle, bamboo, rattan, india malacca joints, and other woods not specially provided for, in the rough, or not further advanced than cut into lengths suitable for sticks for umbrellas, parasols, sunshades, whips, fishing rods, or walking canes.

Several protests were involved before the trial court, but the appeal to this court was limited (according to appellant's brief, "for purposes of simplicity and economy") to protest 749373–G, which covers two entries. It is said in the brief that "A large group of like cases are covered by suit 4046" upon our calendar. The trial court's decision in that case seems to have been rendered concurrently with its decision in the instant case. Suit 4046 has not yet been heard by this court.

During the course of the trial it was stipulated that the merchandise covered by protest 749373–G embraced in entries 2875 ("Pal. stalks") and 3171 ("15 bales palm fibre")—

identified as palm reed on the invoices consists of palm ribs of the same material condition and use as the merchandise involved in Great Pacific Company vs. United States, T. D. 46757, and that the evidence and exhibits in that case may be admitted herein.

During the trial of the case which resulted in the decision, T. D. 46757 (see 64 Treas. Dec. 590) so alluded to, which involved protest 478651–G, there was inserted into the record thereof by stipulation, the record in another case, styled *Great Pacific Co.* v. *United States*, being protest 304143–G, the decision of which was rendered in T. D. 44580. (See 59 Treas. Dec. 207.) Therefore, the latter case is also a part of the record in the case before us.

No appeals to this court were prosecuted from the decisions, T. D. 44580 and T. D. 46757, *supra*. So, the issues now before us are here for the first time.

It is noted that protests 304143–G, *supra*, and 478651–G, *supra*, arose under the Tariff Act of 1922, but neither was decided until after the passage of the Tariff Act of 1930. Both cases were decided by the Third Division of the Customs Court, the opinion in the first being by Young, J. (since deceased), and that in the second by Keefe, J., author of the opinion in the instant case. An examination of those opinions discloses that certain paragraphs of the 1922 act there quoted, or referred to, were, respectively, substantial prototypes of those of the 1930 act which are at issue here. Since the opinion in the instant case (Abstract 34604) is quite brief, we have had recourse to the opinions in the other cited cases, *supra*, to obtain the full reasoning of the trial tribunal. We have also examined its opinion in T. D. 48458 (by Keefe, J.) referred to in its decision in the instant case, being the case involved in suit 4046, alluded to above as being on our calendar.

Appellant's brief directs attention to the fact that the reports of the collector and appraiser upon the protest here involved mention an item of "dyed palmyra fiber" but adds, "it is not referred to in the testimony, and this appeal is not intended to cover it."

There is no dispute relative to the nature, character or ultimate use of the involved merchandise, nor as to its condition when imported.

So, there is no necessity of any comprehensive review of the record. We think the brief on behalf of the Government fairly and succinctly states substantially all that is necessary for an understanding of what the merchandise is, as well as its ultimate use. After reciting the inclusion in this record of the records in the two *Great Pacific Co.* cases, above related, the brief says:

In the first case, *Frank W. Smith*, a broom manufacturer located in San Francisco, stated that the merchandise in controversy, represented by Exhibits 1 and 2, was used to make push brooms and pot-scrubs. The imported material is usually received in bales of 133 pounds within which are small packages ranging in weight from 5½ to 15 pounds.

The process of treatment prior to exportation from China (the country of origin) was described by the witness Katz. The palm leaf just as it comes from the tree is first soaked in water and stripped of its pulp. Then the ribs which remain are torn from the butt end of the leaf, separated, and graded into various lengths. The lengths are again segregated, gathered into bundles and tapped on the floor so that all the ends are uniform. The pulp from the bottom and the thin ends from the top are trimmed off. The remaining sticks are packed in bundles and shipped to the United States.

To the foregoing we find it necessary only to add that, as is pointed out in the brief of appellant, the material in question is imported in lengths ranging from 16 to 29 inches.

The foregoing describes the merchandise in its imported condition. The treatment given the "sticks" after importation, in order to fit them for ultimate use, and the method of inserting them into the brooms and pot-brushes are then described as follows:

* * * they are run through a combing machine to free all the fibers at the butt end. The necessary trimming is done and the ribs are repacked in bundles in which an equal number of butt ends have been stacked at top and bottom to produce a uniform package. In this condition they are used by the broom manufacturer.

The fibers are soaked in warm water to make them pliable, then bent in half and the looped end is inserted into the holes of wooden blocks which are used as the backs of pot-scrubs or stable brooms. The looped ends are held to the back of the broom or brush by wire staples. In some instances the palm fiber is twisted in strands before being inserted in the back of the brush and the strands rather than the individual fibers are stapled to the wooden block. In every case, after the fibers have been attached to the block the ends are trimmed to secure a uniform brushing surface.

The brief on behalf of appellant, citing the pertinent evidence of record, states:

In making push brooms, the fiber is doubled over in the middle, leaving the ends protruding, and the trimming cuts both the butt ends and the small ends. In making pot scrubs the long lengths of fiber are first cut to lengths of 7 to 11 inches only; and then after being joined the ends of the ribs are trimmed, and the handle end is formed by cutting the material to a bevel.

Obviously, the first question to be determined here is that of whether the merchandise falls within the classification given by the collector under the latter part of paragraph 1558, *supra.* If so, we need go no

further; if not, then it must be determined whether it is classifiable under any of the paragraphs claimed by appellant and, if so, which.

In support of appellant's contention that the merchandise does not consist of "articles manufactured, in whole or in part, not specially provided for" reliance is placed principally (of course, under the facts shown as to its condition when imported) upon the decision of this court in the case of *Cone & Co. (Inc.)* v. *United States,* 14 Ct. Cust. Appls. 133, T. D. 41672.

An examination of that case discloses a striking analogy between it and the case at bar in numerous particulars. In describing the merchandise there involved, we said:

The goods imported were of five commercial grades, namely, G, G U, J V, V F C, and H V. No contention was made in the court below or here as to the correctness of the collector's classification as to all items of such goods designated as grades G and H V. The only error alleged is as to the correctness of the classification of such of said goods as were designated as grades G U, V F C, and J V. We shall therefore confine our examination of the record to such facts as shall be material only to the goods in question.

The material in question is a product of the palmyra palm, botanically known as *borassus flabelliformis,* grown in the East Indies. The portion of the plant used is the leaf stalk. The leaf springs directly from the trunk of the tree and when fully formed, as shown by the official sample and photographs in evidence, consists of a large, flattened, spoon-shaped end, partially inclosing the trunk, a long intermediate slender stem and a broad fan-shaped leaf proper, the whole being ordinarily about 6 or 7 feet in length. The portion used is the base or flattened, spoon-shaped end, called the pattal, about 2 or 3 feet in length, which is composed of many longitudinal vegetable fibers, inclosed in a pulp. The rough fiber is prepared by the coolies who gather it and is sold by them to the exporters. In thus preparing it for sale, the leaf is cut from the tree and the usable part removed from the balance of the leaf by cutting; while green, the pattal is then pounded to free the fibers from the pulp. These partially removed fibers are then hackled by means of a crude device consisting of a number of long, sharp nails embedded in a board, the fibers being drawn through these nails, by the operator, by hand. This frees the fibers from the pulp and separates them. These fibers are then jumped and evened at one end and are tied into bundles by means of some of the fibers, each bundle being about 3 inches in diameter. They are then baled for export, without further processing. The fibers in the G U and V F C grades are not separated for length but are bundled and baled as they come from the plant; The J V grade is divided into three classes, the long bundles being known as J V I, the medium length bundles as J V II, and the short bundles as J V III, each class being baled separately.

The official samples show the bundles of fibers in question to run from 1 foot to 18 inches in length. The fibers are used for broom and brush making. As imported, they can not be so used, but must be first cut and trimmed to size at both ends, and dyed, when dyeing is desired by the manufacturers.

It should be said that in that case a part of the merchandise was imported under the 1913 tariff act and part under the 1922 act. It was classified by the collector under paragraphs of the respective acts which were prototypes of paragraph 1558 of the 1930 act, *supra.*

The first question considered by us there was whether the imported fibers had been manufactured in any manner and our holding was that they had not been. We said:

From the record, it appears that nothing has been done to those fibers, after they were separated from the leaf in which they grew, except to collect them in bundles, even one end by jumping, and tie the bundles. It can hardly be said, therefore, that they have been manufactured, in any way, since their extraction from the leaf. Nor are we of opinion that the processes of extraction from the leaf can be said to be manufacturing processes. By a long and uniform line of decisions, the courts, including this court, have held that an operation, or operations, which simply cleanses or cleanse the material desired and frees or free it from impurities, so that it may be used as raw material in manufacturing processes is or are not a manufacturing process or processes.

Numerous authorities were cited.

In the instant case appellant contends that the palm ribs involved "have not been further advanced than was the merchandise in that case." Indeed, the brief at one point says, "they seem to have been less advanced toward ultimate use than the Palmyra fiber  *  *  *."

There are some differences between the treatment given the merchandise involved in that case, before its importation, and that given the merchandise in the instant case, before its importation, but these differences are not of a character which renders inapplicable the rule there followed, with respect to the merchandise not being articles of manufacture. In principle, there is no distinction that we are able to discern.

It is, therefore, held that the merchandise was improperly classified by the collector, and the trial court erred in sustaining such classification.

What then is the proper classification?

In T. D. 44580, supra, the opinion quotes (among other paragraphs of the Tariff Act of 1922 under which the importer there made alternative claims) paragraphs that were prototypes of the paragraphs of the 1930 act which we have quoted, supra, but under the court's view that the merchandise had been properly classified by the collector as articles manufactured in whole or in part it did not find it necessary to analyze the several paragraphs under which the importer's claims were made.

In T. D. 46757, supra, the same paragraphs of the 1922 act were cited, but the only paragraph quoted in full was paragraph 1703, prototype of paragraph 1806 of the 1930 act, supra. The trial court then discussed that paragraph and held it inapplicable. This holding, we think, was correct and it is applicable here. We are not convinced by the evidence upon this point that the merchandise is wood of a character contemplated to be covered by paragraph 1806.

In T. D. 48458, supra, the trial court followed the line of reasoning in the two prior cases cited, and reached the same conclusion with

little or no discussion of the paragraphs under which importer claimed, other than paragraph 1806.

Under the view which we take, it is unnecessary for us to analyze or discuss the applicability of the first part of paragraph 1558 (the unenumerated nonmanufactured articles claim), or the applicability of paragraph 1722. We content ourselves with the statement that neither is regarded as applicable.

This leaves to be considered only the claim under paragraph 1684, *supra,* it being under the particular language of that paragraph reading "* * * all other textile grasses or fibrous vegetable substances, not dressed or manufactured in any manner, and not specially provided for."

The exact language was used in the respective pertinent paragraphs of the 1913 and 1922 tariff acts and this court considered and passed upon it in the *Cone & Co. (Inc.)* case, *supra.* This court there analyzed the clause and, after stating that "The fact that the fiber in question may not be manufactured does not necessarily mean that it has not been dressed," proceeded to review a number of cases and held that the merchandise was not dressed and that it was entitled to free entry.

In that case the Government relied strongly, as here it relies, upon the cases of *Cone et al.* v. *United States,* 5 Ct. Cust. Appls. 491, T. D. 35149, and *Cone* v. *United States,* 6 Ct. Cust. Appls. 263, T. D. 35477. Those two cases were discussed by us in connection with other cases and we said:

From this somewhat cursory view of the authorities, it becomes evident that the test commonly applied to the classification of such vegetable fibers is this: If nothing has been done to the fibers except to remove them from the vegetable tissue in which they grew, to cleanse them, and to pack them into bundles for shipment, they are not to be considered as dressed; if they have been, after having been removed from their surrounding tissue, advanced by being sorted, cut into lengths, oiled, dyed, or otherwise prepared, and fitted for their ultimate use, they are to be treated as dressed. In other words, processes necessary to produce the fibers are not to be considered as manufacturing or dressing, but processes applied to the fibers themselves, advancing them in condition, are such manufacturing or dressing operations.

The foregoing was quoted by Young, J., in T. D. 44580 and the decision there seems to have rested largely upon the construction which the trial court placed upon it and, from the opinions in the subsequent *Great Pacific* case, *supra,* and in this case, it is assumed the same reason largely controlled. Under the view that the merchandise here differed from the merchandise there, such conclusion might be logical, but under the view which we hold that it does not differ in any material respect, either as to being manufactured or as to being dressed, the conclusion is not sound, and our decision in the *Cone & Co. (Inc.)* case, *supra,* is controlling unless the same be overruled.

In our opinion, no reason has been presented sufficient to require or justify the overruling of that decision. It must be clear that we regarded the *Cone & Co. (Inc.)* case, *supra*, distinguishable from the earlier *Cone et al.* and *Cone* cases, *supra;* but even if there be deemed to be a conflict between the first case and the last two, the decision in the first being latest in point of time should be followed.

We regard the merchandise at issue (not including any "dyed palmyra fiber," if any there be) as being properly classifiable under paragraph 1684 of the Tariff Act of 1930, as claimed by the importer.

Among appellant's assignments of error is one relating to the exclusion of testimony proffered with respect to administrative practice in the classification of certain merchandise different from the merchandise at issue but perhaps bearing some resemblance thereto. In view of our decision upon the record as it stands, that matter becomes immaterial here and we need not pass upon that assignment.

The judgment of the United States Customs Court (except any part thereof which may cover "dyed palmyra fiber") is *reversed* and the cause will be *remanded* for further proceedings consistent with this decision.