(C. D. 1790)

CHAS. H. DEMAREST, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 5, 1956)

*Strauss & Hedges* (*E. Thomas Honey* and *Eugene F. Blauvelt* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*William J. Vitale*, trial attorney), for the defendant.

Before EKWALL, JOHNSON, and DONLON, Judges

DONLON, Judge: By stipulation, dated March 28, 1956, the previous submission of this case was set aside and the case resubmitted to the third division of this court as now constituted.

The collector classified this merchandise, palmyra fiber and palmyra stalks, imported from India, as fibrous vegetable substances, manufactured, in whole or in part, not specially provided for, under paragraph 1558 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, with duty at the rate of 10 per centum ad valorem. The invoices also include certain merchandise identified as bassine, which is dyed palmyra fiber. Plaintiff has abandoned its protest as to the bassine. There is before us, therefore, only the issue as to classification of the merchandise described as palmyra stalks and palmyra fiber.

Several claims are made in the plaintiff's protest, but, on trial, plaintiff relied on two only of its protest claims.

The chief claim is that this merchandise is properly duty free under the provisions of paragraph 1684 of the Tariff Act of 1930 as fibrous vegetable substances, not dressed or manufactured in any manner, and

not specially provided for. Alternatively, plaintiff claims that palmyra stalks and palmyra fiber are raw or unmanufactured articles, not enumerated or provided for, and, therefore, dutiable under paragraph 1558 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, at the rate of 5 per centum ad valorem.

No samples were offered from the shipment which was the subject of this entry, but illustrative exhibits introduced by both parties were adequately related, both as to the processing operation abroad and the use of the imported material in domestic manufacture, to the instant merchandise. The testimony was extensive.

Palmyra fiber and palmyra stalks are parts of the leaf and leaf stem of the palmyra palm tree. The first step is to sever the leaf stem from the tree. The stem is then cut away from the leaf, and it is from the stem that palmyra fiber is obtained. The stalk is the central rib of the leaf.

The stem of the palmyra leaf, after being cut from the leaf, is beaten to a pulpy mass. This pulp is then drawn through a comb made of nails imbedded in a board, a process that is known as hackling (p. 119). Hackling separates the fibers from the pulpy mass. These fibers are not of uniform length, and they are sorted into groups of approximately similar length. Each group is then tied in a bundle.

The stalk, or central rib of the palmyra leaf, is stripped from the leaf. This stalk tapers from a coarse butt at the end where the stem has been severed from the leaf down to a fine point at the leaf tip (p. 24). When the stalks are stripped from the leaves, the stalks are sorted into groups according to the length of the stalks (p. 37). Each group, as thus sorted, is then tied in a bundle.

The bundles, both stalks and fiber, are trimmed at the tip for uniformity of length (p. 25). It is these bundles of uniform length stalks and fiber which are shipped.

Palmyra stalks and palmyra fiber are used in the manufacture of brooms. The fiber, which is finer than the stalks, is also used in the manufacture of brushes.

There is no dispute that the imported merchandise, both fiber and stalks, is a fibrous vegetable substance. That much is conceded. The plaintiff's case is based principally on a contention that the stalks and fiber, as imported, had not been "dressed or manufactured in any manner," within the eo nomine provision of paragraph 1684. However, if "dressed" but not "manufactured," and, therefore, not within the eo nomine provision incorporated into paragraph 1558 by the General Agreement on Tariffs and Trade, plaintiff's alternative claim is, since there is no eo nomine provision for unmanufactured but dressed fibrous substances, that classification is properly under the

nonenumerated unmanufactured statutory provision of paragraph 1558.

Considerable testimony was introduced as to the processing of the stalks and fiber in India before shipment and as to the domestic manufacture here of brooms and brushes, using the imported stalks and fiber in that process of manufacture.

The testimony as to processing in India leaves little room for doubt that the stalks and fiber, as they were imported, had been dressed. Dress, or dressed, as defined in Webster's New International Dictionary, second edition, 1956, means:

* * * in general, to put in good order; to make ready; to arrange; to prepare for use * * *.

Notwithstanding some conflict of testimony as to whether or not soaking of the stalks and fibers was a necessary or useful practice in the process of domestic manufacture of brooms and brushes from the imported bundles of stalk and fiber, the testimony is clear that the stalks and fiber are ordered by specified lengths and in bundles of a size suitable for insertion in the broom or brush block, without further sorting or cutting. This connotes the making ready, arranging, and preparing for use, which are implicit in the term "dress," as applied to the process of sorting, bundling, and trimming carried on in India, as described in the testimony.

The cases so hold. *Cone et al.* v. *United States*, 5 Ct. Cust. Appls. 491, T. D. 35149. *Cone & Co. (Inc.)* v. *United States*, 14 Ct. Cust. Appls. 133, T. D. 41672.

There remains to consider plaintiff's alternative claim that this merchandise, although dressed, is not manufactured, and, therefore, is dutiable as unmanufactured merchandise, not enumerated or provided for, under paragraph 1558.

In *Cone & Co. (Inc.)* v. *United States, supra,* the court stated, at page 136:

* * * a material may be dressed and not manufactured. *United States* v. *Dudley,* 174 U. S. 670.

The *Dudley* case, cited by our appellate court in the *Cone* case, *supra,* was decided by the United States Supreme Court. There, the merchandise consisted of sawed boards and plank, planed on one side, tongued, and grooved. The Government claimed classification as manufactures of wood. The Court held that the sawed boards and plank should be classified as dressed lumber, rather than as manufactures of wood.

However, the narrow line between the two concepts, dressing and manufacturing, is indicated in the opinion of Mr. Justice Brown for

the unanimous court. In discussing the difference in these two concepts, he said:

Ordinarily, the fact that an article in the process of manufacture takes a new name is indicative of a distinct manufacture, * * * but we do not think it important in this case that "dressed lumber" is divisible into flooring, sheathing and ceiling, since sawed lumber is none the less sawed lumber, though in its different forms and uses it goes under the names of beams, rafters, joists, clapboards, fence boards, barn boards and the like. In other words, a new manufacture is usually accompanied by a change of name, but a change of name does not always indicate a new manufacture. Where a manufactured article, such as sawed lumber, is usable for a dozen different purposes, it does not ordinarily become a new manufacture until reduced to a condition where it is used for one thing only. So long as "dressed lumber" is in a condition for use for house and ship building purposes, generally, it is still "dressed lumber;" but if its manufacture has so far advanced that it can only be used for a definite purpose, as sashes, blinds, mouldings, spars, boxes, furniture, etc., it becomes a "manufacture of wood."

By analogy, it appears from the evidence of record in this case that the "dressed" fibrous vegetable substances, which are the merchandise before us, have been so far advanced that they are used for a single purpose, namely, the manufacture of brooms and brushes. If there are other and more general uses, the record does not disclose them.

The merchandise, therefore, comes within the *eo nomine* designation under paragraph 1558, specified in the General Agreement on Tariffs and Trade, T. D. 51802, as follows:

Articles manufactured, in whole or in part, not specially provided for: * * * fibrous vegetable substances (except istle or Tampico fiber), 10% ad val.

The record does not overcome the presumption that the collector's classification is correct.

The protest is overruled. Judgment will be rendered accordingly.