BEFORE THE FIRST DIVISION, OCTOBER 25, 1962

No. 67143.—Meadows Wye & Co., Inc. *v.* United States, protest 59/18776 (New York).

OLIVER, Chief Judge: This protest relates to certain merchandise which was assessed with duty at the rate of 30 per centum ad valorem under paragraph 218 (f) of the Tariff Act of 1930, as modified by T.D. 53865, supplemented by T.D. 53877, which, so far as pertinent, reads as follows:

All articles (not including table and kitchen articles and utensils) of every description not specially provided for, composed wholly or in chief value of glass, blown or partly blown in the mold or otherwise, or colored, cut, engraved, etched, frosted, gilded, ground (except such grinding as is necessary for fitting stoppers or for purposes other than ornamentation), painted, printed in any manner, sandblasted, silvered, stained, or decorated or ornamented in any manner, whether filled or unfilled, or whether their contents be dutiable or free:

*  *  *  *  *  *  *

Other, valued not over $1.66⅔ each (except Christmas tree ornaments, household articles, and articles and utensils commercially known as bubble glass and produced otherwise than by automatic machine; and except articles and utensils blown or partly blown in the mold or otherwise and cut or engraved and valued at $1 or more each)___ 30% ad val.

Plaintiff claims that the proper classification for the merchandise is as waste, not specially provided for, under paragraph 1555 of the Tariff Act of 1930, as modified by T.D. 52739, carrying a dutiable rate of 4 per centum ad valorem.

The sole witness was the importer of the present merchandise, who described his occupation as a "mosaicist," "in other words, an expert on mosaics" (R. 2–3), whose principal business is the importation of a glass mosaic material, known under trade name, "Vetrotex," that is manufactured in Venice, Italy. "Vetrotex" consists of sheets of ¾-inch squares of glass of different colors (plaintiff's exhibit 5) and is used as a wall or floor covering.

The merchandise involved herein consists of pieces and chunks of colored glass, irregular in shape and of various sizes (plaintiff's exhibits 1–A and 1–B), that are the refuse or waste which accumulates in workshops and under workbenches in the course of manufacturing "Vetrotex." After importation, all foreign substances and extraneous matter are removed from the imported material, and the pieces and chunks of colored glass are then put through grinding and screening processes that produce a conglomerate of glass pieces, ranging in size from ⅛ to ¾ inch, generally smaller than the size of the material at the time of importation. The ground glass thus obtained is mixed with cement, sand, or glue to make surfacing and made into "wall finishers" (plaintiff's exhibits 3–A, 3–B, and 3–C), or it may be mixed with other material, such as stone, and with a surfacing agent, like cement or sand, and made into a panel (plaintiff's exhibit 4).

To support the collector's classification of the present merchandise, counsel for defendant, in his brief, cites a line of cases wherein clippings, offal, or broken pieces, resulting from manufacturing processes applied to the raw material, were held to be properly classifiable under a tariff provision covering the original material. *Latimer* v. *United States*, 223 U.S. 501; *Myers* v. *United States*, 110 Fed. 940; *Fawcett* v. *United States*, 146 Fed. 83, affirmed in 154 Fed. 1003; *Salomon* v. *United States*, 2 Ct. Cust. Appls. 431, T.D. 32196; *Mawer-Gulden-Annis* v. *United States*, 17 C.C.P.A. (Customs) 270, T.D. 43689; *A. G. Willsey* v. *United States*, 4 Treas. Dec. 726, T.D. 23246; *Thermal Syndicate, Ltd.* v. *United States*, 12 Cust. Ct. 205, C.D. 855. Following is a brief review of each of the cited cases.

In the *Latimer* case, small pieces broken from tobacco leaves in the process of manufacturing and handling of tobacco, which were used in the making of "cigarettes and stogies," were held to be classifiable as tobacco, unmanufactured, rather than as waste.

The *Myers* case held small sheets or pieces of mica, which fell off in the process of thumb-trimming and which were capable of uses for which mica is employed, to be dutiable as mica and not as waste.

The *Fawcett* case held pieces of combed silk that fell from the machine in the process of further manufacture to be silk, partly manufactured, and not silk waste.

In the *Salomon* case, broken fibers of undressed raw jute, rejected by the carding machine in the first process of manufacture, were held to be classifiable under the provision for jute, unmanufactured, rather than as waste.

Our appellate court, in the *Mawer-Gulden-Annis* case, held olives in brine, that had been broken and split in the pitting and stuffing processes but which were "edible and nutritious to the same degree as perfect pitted or stuffed green olives," to be dutiable as olives in brine and not as waste.

In the *Willsey* case, small scraps clipped from wire and sheets of platinum were held to be more specifically provided for under the provision for "platinum, unmanufactured," than as waste.

The *Thermal Syndicate, Ltd.*, case involved pieces of fused silica broken off in the process of manufacturing silica articles and used for at least one of the purposes for which silica in larger pieces is used. The court held the merchandise to be properly classifiable as silica, rather than as waste.

The important feature, in all of the cases hereinabove reviewed, is that the imported commodity in each of them was used, or at least susceptible of use, for the same purpose as the original material. This is not true with respect to the present merchandise. The pieces and chunks of colored glass under consideration are an aggregate of discarded "left-overs" (R. 9), resulting from the cutting of the squares and tapping of the material to form the finished commercial glass product, "Vetrotex," and are unfit for the original purpose served by the raw material.

Judicial interpretation of the term "waste," as enunciated in *Harley Co.* v. *United States*, 14 Ct. Cust. Appls. 112, T.D. 41644, controls the classification of the present merchandise. In that case, the appellate court stated as follows:

In the tariff sense, waste is a term which includes manufactured articles which have become useless for the original purpose for which they were made and fit only for remanufacture into something else. It also includes refuse, surplus, and useless stuff resulting from manufacture or from manufacturing processes and commercially unfit, without remanufacture, for the purposes for which the original material was suitable and from which material such refuse, surplus, or unsought residuum was derived. The latter class of waste might be appropriately designated as new waste and includes such things as tangled spun thread, coal dust, broken or spoiled castings fit only for remanufacture. T.D. 33376; *Willets* v. *United States*, 11 Ct. Cust. Appls. 499, 500, 501; *Schlesinger* v. *Beard*, 120 U.S. 264; *Seeberger* v. *Castro*, 153 U.S. 32; *Patton* v. *United States*, 159 U.S. 500, 505, 509; *Latimer* v. *United States*, 223 U.S. 501–503.

Applying the definitive language of the foregoing quotation to the present issue, it can be said that the merchandise under consideration is "useless stuff resulting from manufacture or from manufacturing processes," that it is not susceptible of the use for which the original material was suitable, and that it is "fit only for remanufacture into something else." The commodity is waste within the pronouncements of the *Harley* case, and, as such, is dutiable at the rate of 4 per centum ad valorem under paragraph 1555, as modified, *supra*, as claimed by plaintiff.

Consideration has been given to all of the cases cited in the briefs filed by counsel for the respective parties. Reference herein has been made only to

those cases considered necessary to support the reasoning followed and the conclusion reached.

The protest is sustained and judgment will be rendered accordingly.