CONE & CO. (INC.) *v.* UNITED STATES (No. 2713) [2]

MATERIAL, MANUFACTURE DISTINGUISHED—PALMYRA FIBERS, NOT DRESSED.
It has been many times held in this court and others that processes which result only in getting a material by itself are not manufacturing processes. Consequently palmyra fibers, separated from the plant and tied into bundles with one end evened, have not been manufactured under paragraph 385 or 497, tariff act of 1913, or the corresponding paragraphs (1459 and 1582) of the 1922 act. Neither are they "dressed" within the meaning of that word in paragraph 497, tariff act of 1913, and the corresponding paragraph (1582) of the 1922 act. *Cone et al.* v. *United States,* 5 Ct. Cust. Appls. 491, and

---

[1] T. D. 41671.          [2] T. D. 41672.

*Cone v. United States,* 6 Ct. Cust. Appls. 263, distinguished. If nothing has been done to vegetable fibers except to remove them from the vegetable tissue in which they grew, cleanse them, and pack them into bundles for shipment, they are not dressed; if they have been sorted, cut into lengths, oiled, dyed, or otherwise prepared, and fitted for their ultimate use, they are dressed. The fibers at bar are free under paragraph 497, tariff act of 1913, and the corresponding paragraph (1582) of the 1922 act as unmanufactured and undressed fibers.

## United States Court of Customs Appeals, May 22, 1926

APPEAL from Board of United States General Appraisers, Abstract 50447

[Reversed and remanded.]

*Brooks & Brooks* (*Ernest F. A. Place* of counsel) for appellant.
*Charles D. Lawrence,* Assistant Attorney General (*Oscar Igstaedter* and *Marcus Higginbotham,* special attorneys, of counsel), for the United States.

[Oral argument May 10, 1926, by Mr. Brooks, jr., and Mr. Igstaedter]

Before GRAHAM, Presiding Judge, and BARBER, BLAND, and HATFIELD, Associate Judges; SMITH, Associate Judge, participating by agreement of counsel

GRAHAM, Presiding Judge, delivered the opinion of the court:

Twelve shipments of palmyra fiber were entered by importers at the port of New York, 11 of the same being under the act of October 3, 1913, and 1, entry No. 751901, being under the Tariff Act of 1922. The collector, in the case of said 11 entries, classified the goods for dutiable purposes under paragraph 385 of the tariff act of October 3, 1913, and in case of said entry No. 751901, under paragraph 1459 of the Tariff Act of 1922, as articles manufactured, in whole or in part, not provided for. The importers filed nine protests against these assessments of duty by the collector. Such protests claimed the goods, in each of the said 11 entries, to be free of duty under paragraph 497 of said tariff act of 1913, or, in the alternative, to be dutiable under paragraph 385 thereof at 10 per centum or 15 per centum ad valorem. In entry No. 751901 the claim was for free entry under paragraph 1582 of the Tariff Act of 1922, or, in the alternative, dutiable at 10 per centum or 20 per centum ad valorem under paragraph 1459 thereof. The several protests, on being overruled by the collector, were consolidated and thus heard by the court below, which, after consideration, overruled the same and rendered judgment accordingly. From that judgment the importer appeals.

The goods imported were of five commercial grades, namely, G, G U, J V, V F C, and H V. No contention was made in the court below or here as to the correctness of the collector's classification as to all items of such goods designated as grades G and H V. The only error alleged is as to the correctness of the classification of such of said goods as were designated as grades G U, V F C, and J V. We shall therefore confine our examination of the record to such facts as shall be material only to the goods in question.

The material in question is a product of the palmyra palm, botanically known as *borassus flabelliformis*, grown in the East Indies. The portion of the plant used is the leaf stalk. The leaf springs directly from the trunk of the tree and when fully formed, as shown by the official sample and photographs in evidence, consists of a large, flattened, spoon-shaped end, partially inclosing the trunk, a long intermediate slender stem and a broad fan-shaped leaf proper, the whole being ordinarily about 6 or 7 feet in length. The portion used is the base or flattened, spoon-shaped end, called the pattal, about 2 or 3 feet in length, which is composed of many longitudinal vegetable fibers, inclosed in a pulp. The rough fiber is prepared by the coolies who gather it and is sold by them to the exporters. In thus preparing it for sale, the leaf is cut from the tree and the usable part removed from the balance of the leaf by cutting; while green, the pattal is then pounded to free the fibers from the pulp. These partially removed fibers are then hackled by means of a crude device consisting of a number of long, sharp nails embedded in a board, the fibers being drawn through these nails, by the operator, by hand. This frees the fibers from the pulp and separates them. These fibers are then jumped and evened at one end and are tied into bundles by means of some of the fibers, each bundle being about 3 inches in diameter. They are then baled for export, without further processing. The fibers in the G U and V F C grades are not separated for length but are bundled and baled as they come from the plant; the J V grade is divided into three classes, the long bundles being known as J V I, the medium length bundles as J V II, and the short bundles as J V III, each class being baled separately.

The official samples show the bundles of fibers in question to run from 1 foot to 18 inches in length. The fibers are used for broom and brush making. As imported, they can not be so used, but must be first cut and trimmed to size at both ends, and dyed, when dyeing is desired by the manufacturers.

There is some confusion in the record as to the method of preparation of these various grades, occasioned by the deposition of F. H. Slade and a letter, Exhibit 5 (by error marked "Exhibit 6"), written by him December 15, 1922. In this letter the grade V F C is described as the white fiber which has been soaked, dried, cleaned, sized into three grades, and bundled. In his deposition, taken August 15, 1924, he states: "I also produce first of all these two samples 'J V' and 'G U,' which, in other words, is 'V F C,' the new mark, which is brought into the factory rough and ready." We take it from this that since the writing of Exhibit 5, and before the taking of this deposition, the grades J V, G U, and V F C had been merged into one grade known as V F C. And this is borne out by an inspection of the official samples, which discloses no differences in color or appearance, except as to length of fibers.

The competing paragraphs of the tariff act of October 3, 1913, which have in substance been reenacted in paragraphs 1459 and 1582 of the Tariff Act of 1922, are as follows:

385. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for in this section, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not provided for in this section, a duty of 15 per centum ad valorem.

497. Grasses and fibers: Istle or Tampico fiber, jute, jute butts, manila, sisal grass, sunn, and all other textile grasses or fibrous vegetable substances, not dressed or manufactured in any manner, and not specially provided for in this section.

The question for solution therefore is: Have the fibers imported been dressed or manufactured in any manner?

From the record, it appears that nothing has been done to those fibers, after they were separated from the leaf in which they grew, except to collect them in bundles, even one end by jumping, and tie the bundles. It can hardly be said, therefore, that they have been manufactured, in any way, since their extraction from the leaf. Nor are we of opinion that the processes of extraction from the leaf can be said to be manufacturing processes. By a long and uniform line of decisions, the courts, including this court, have held that an operation, or operations, which simply cleanses or cleanse the material desired and frees or free it from impurities, so that it may be used as raw material in manufacturing processes is or are not a manufacturing process or processes. The underlying theory upon which these cases were decided is that well expressed by Wheeler, J., in *United States v. Godwin*, 91 Fed. 753, when he stated that if the processes applied to the material were no "other than to get it by itself," the material could not be said to be manufactured. We have so held in case of cotton linters in *United States v. Solomon*, 1 Ct. Cust. Appls. 246; of rubber prepared from waste rubber articles, *United States v. Michelin Tire Co.*, 1 Ct. Cust. Appls. 518; of opium in bricks and cakes, *Merck & Co. v. United States*, 5 Ct. Cust. Appls. 347; of spruce gum, *United States v. Maine Central Railroad Co.*, 7 Ct. Cust. Appls. 114; of degummed silk waste, *Smillie & Co. v. United States*, 11 Ct. Cust. Appls. 199; and of carbonized wool, *United States v. Stone & Downer*, 12 Ct. Cust. Appls. 293.

The fact that the fiber in question may not be manufactured does not necessarily mean that it has not been dressed, for a material may be dressed and not manufactured. *United States v. Dudley*, 174 U. S. 670. It remains, therefore, to be seen whether this material has been dressed, within the meaning of the statute.

Material similar in character, and in cases identical, with that involved here has been imported into this country for many years. As a result, the courts, particularly the Board of General Appraisers, have been required, on many occasions, to pass upon the dutiability of such goods. We shall not attempt a general survey of the au-

thorities, but shall cite sufficient to show that the term "dressed" as applied to such vegetable fibers, has come to have, in a tariff sense, a definite and well understood meaning.

In G. A. 1675, certain African fibers, produced by shredding or hackling palm leaves and twisting the resultant mass by hand, when green, into a loose rope, were held to be a "fibrous vegetable substance, unmanufactured, or undressed." The fibrous part of the bark of a tree, stripped therefrom and loosely twisted into a rope, was held to be undressed in T. D. 14830. In T. D. 15579 certain raffia fiber, derived from a species of palm, was held not to be manufactured or dressed.

In T. D. 33961, 25 Treas. Dec. 589, vegetable fibers, taken from the maguey plant and separated from its dirt, dust, and leaves by shaking, were held to be not dressed, the court saying:

> * * * and it has been held that where the fibers had been advanced by dyeing hackling, brushing, polishing, or oiling and combing, they were dutiable as nonenumerated manufactured articles. Wilkens *v.* United States (84 Fed. 152); G. A. 1023 (T. D. 12209); G. A. 1252 (T. D. 12568); G. A. 2980 (T. D. 15956); G. A. 4556 (T. D. 21596). But where the fibers had been simply dried, split, and bunched they were held to be free of duty as crude vegetable substances or unmanufactured and undressed grasses or fibrous vegetable substances.

On the other hand, in T. D. 13591, kittool fibers, dyed and "prepared fit for use" in brushes, were held to be manufactured or dressed. In T. D. 15949, similar fibers, prepared from the fibers of palms, hackled, cut into lengths, and brushed and ready for manufacture into brushes, were held to be dressed, as was also an importation of black Mexican fibers, which had been hackled, dyed, brushed, or polished and drawn, T. D. 15956, and an importation of piassava vegetable fibers which had been cut to lengths and made suitable for brushes, T. D. 16088. In T. D. 16969 piassava fiber was hackled and bundled by natives of the country where produced and then sent to England, where it was drawn or assorted, cut to uniform lengths, and bunched, and thus imported. It was held to be dressed. In T. D. 17486, palmyra fiber, selected, cut into lengths, and bunched, was held to be dressed. In *Wilkens* v. *United States*, 84 Fed. 152, kittool fiber sent to England and there combed, softened with oil, and bunched, was held to be manufactured or dressed. Palmyra fiber was involved in T. D. 24860, 6 Treas. Dec. 1042. There the board said, quoting the report of the appraiser:

> The fiber in question is hard and wiry, brown in color, and is variously known as Indian or Palmyra fiber, Bahia piassava, and Para piassava. In this case it is not crude or unmanufactured (in which condition it is generally sold in large bundles of irregular lengths), but has been assorted or dressed, and afterwards cut into uniform lengths of 6 inches and bunched, in which shape it is prepared for brushmakers' use. It being therefore partially manufactured and not specially provided for, it was in our opinion properly returned under section 6.

The goods were held to be dressed or manufactured.

In T. D. 27508, Abstract 12311, Algiers fiber, shredded, twisted into rope form, and colored black, was held to be dressed, the dyeing being considered a process of manufacturing or dressing.

This court has had occasion to pass upon similar questions. In *United States* v. *Flatt & Co.*, 5 Ct. Cust. Appls. 210, coco fibers had been imported. They had been cut into uniform lengths, bunched, and prepared for use in the manufacture of brushes. They were held to be not crude coco fibers, but unenumerated manufactured articles.

The Government relies strongly upon *Cone et al.* v. *United States,* 5 Ct. Cust. Appls. 491, and *Cone* v. *United States*, 6 Ct. Cust. Appls. 263. In the case first cited, the merchandise, which was piassava fiber, had been cut to specified lengths, sorted, bunched, and dyed. The court held that the material had been "dressed," within the meaning of the statute, and was ready for its ultimate use. In the *Cone* case last above cited the palmyra, piassava, or other fiber had been cut into uniform lengths, sorted, and packed into bundles, ready for use. The goods were held to be dressed.

From this somewhat cursory view of the authorities, it becomes evident that the test commonly applied to the classification of such vegetable fibers is this: If nothing has been done to the fibers except to remove them from the vegetable tissue in which they grew, to cleanse them, and to pack them into bundles for shipment, they are not to be considered as dressed; if they have been, after having been removed from their surrounding tissue, advanced by being sorted cut into lengths, oiled, dyed, or otherwise prepared, and fitted for their ultimate use, they are to be treated as dressed. In other words, processes necessary to produce the fibers are not to be considered as manufacturing or dressing, but processes applied to the fibers themselves, advancing them in condition, are such manufacturing or dressing operations.

We come, therefore, to the conclusion that the fibers imported in the case at bar known as grades G U, V F C, and J V, were not dutiable as articles manufactured in whole or in part, as provided in said paragraphs 385 and 1459, but were entitled to free entry under said paragraphs 497 and 1582.

The judgment of the Board of General Appraisers is reversed and the cause remanded with directions to sustain the several protests in so far as the same affect the goods imported and designated as grades G U, V F C, and J V, and to overrule the protests in all other respects.

*Reversed* and *remanded.*