(C. D. 348)

BALFOUR, GUTHRIE & CO., LTD. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 4, 1940)

*John F. Kavanagh* for the plaintiff.
*Webster J. Oliver,* Assistant Attorney General (*Joseph F. Donohue*, special attorney), for the defendant.
*James W. Bevans, amicus curiae.*

Before CLINE, EVANS, and KEEFE, Judges

KEEFE, Judge: In this action the plaintiff seeks to recover certain customs duties claimed to have been illegally assessed upon an importation of palmyra fiber stalks upon which the collector at New York assessed duty at 20 per centum ad valorem under paragraph 1558, Tariff Act of 1930, as a nonenumerated manufactured article. In his protest the plaintiff made a number of claims but relies principally upon the claim that the merchandise is free of duty under paragraph 1684, as fibrous vegetable substances, not dressed or manufactured in any manner.

At the trial the plaintiff offered the record in the case of *Balfour Guthrie Co., Ltd.* v. *United States*, Abstract 40596, protest 960196–G. The same was admitted in evidence and the sample therein, marked Exhibit 1, was accepted as representing the merchandise at bar. In that case counsel stipulated that the merchandise involved therein was the same in all material respects as that in the case of *American Push Broom & Brush Co.* v. *United States*, 25 C. C. P. A. 248, T. D. 49391, and the record in that case was incorporated therein. After the introduction in evidence of the aforesaid record, including the exhibits and samples as representative of the merchandise herein, the plaintiff rested.

In the *American Push Broom & Brush Co.* case counsel stipulated that the merchandise was the same as that involved in the case of the *Great Pacific Co., Inc.* v. *United States*, T. D. 46757. The evidence and exhibits in that case were incorporated and made a part thereof, and included as a part thereof the evidence and all exhibits and samples in the case of the *Great Pacific Co.* v. *United States*, T. D. 44580.

This the effect of the introduction in evidence of the record in the *Balfour Guthrie Co.* case is to bring before us here the entire record of the litigation upon the subject of palmyra fiber, including the evidence, exhibits, and samples in the foregoing-named cases, to wit, *American Push Broom & Brush Co.* v. *United States*, 25 C. C. P. A. 248, T. D. 49391, *Great Pacific Co., Inc.* v. *United States*, T. D. 46757, and *Great Pacific Co.* v. *United States*, T. D. 44580.

At the conclusion of plaintiff's evidence the Government offered the testimony of a number of witnesses together with various exhibits illustrating the imported material in its crude as well as imported condition. This was followed by rebuttal testimony on behalf of plaintiff. In all of the incorporated cases, as well as the case at bar, the character and condition of the imported merchandise is brought directly in issue. We will therefore defer discussing the testimony presented by those witnesses as we desire first to review the evidence and decisions in the incorporated cases.

In the *Great Pacific Co.* case, protest 304143–G, decided and published in T. D. 44580, the identical class of merchandise involved herein was before us. Upon the weight of the testimony adduced, this court found that after the production of the palm ribs there had been a partial preparation for their final use and held that they were excluded from classification under the provisions in paragraph 1684 as fibrous vegetable substances, not dressed or manufactured in any manner. No appeal was taken from that decision.

In the *Great Pacific Co.* case, protest 478651–G, decided and published in T. D. 46757, the plaintiff tried its case upon the theory that the fibers were sticks of wood as provided for in paragraph 1703. Technical evidence was introduced to show that the ribs were wood. However, this court held that the language of said paragraph was not intended to include palm fiber as sticks of wood. Inasmuch as the record in the previous *Great Pacific Co.* case was incorporated and made a part thereof, the protests were overruled upon the authority of said decision.

In the case of *American Push Broom & Brush Co.*, Abstract 34604, the plaintiff offered testimony to prove the practice of the customs officials at the port of San Francisco to classify as sticks of wood certain rattan and split bamboo, etc., for use in brooms, all of which had been cut to uniform lengths suitable for sticks for umbrellas, etc., and that such had been the practice during the Tariff Acts of 1909 to

1930. Upon objection of Government counsel that such merchandise was not involved therein and that it was irrelevant to prove long-continued practice in the classification of merchandise different from that before the court, the evidence was excluded. It was then stipulated and agreed that the merchandise was of the same material, condition, and use as that involved in the case of *Great Pacific Co.* v. *United States*, T. D. 46757, and the evidence and exhibits in that case were admitted in evidence. Having rejected the evidence submitted to prove a long-continued practice, all that this court had before it was the records in the two previous *Great Pacific Co.* cases, which had been decided contrary to the importer's contentions, and which, in the absence of appeal, had become final and conclusive as to the classification of such merchandise. Inasmuch as the merchandise had been previously held by this court as dutiable according to the classification of the collector, and there being no appeal therefrom, and no additional facts or evidence having been offered to lead to a different conclusion than that determined in the *Great Pacific* cases, this court was of the opinion that it was not necessary again to review the evidence and discuss the issues involved.

The importer thereupon appealed to the Court of Customs and Patent Appeals. See *American Push Broom & Brush Co.* v. *United States*, 25 C. C. P. A. 248, T. D. 49391. The appellate court stated in its opinion that *there was no dispute relative to the nature, character, or ultimate use of the involved merchandise, nor as to its condition when imported.* Having reached that conclusion the court further stated as follows:

* * * So, there is no necessity of any comprehensive review of the record. We think the brief on behalf of the Government fairly and succinctly states substantially all that is necessary for an understanding of what the merchandise is, as well as its ultimate use. After reciting the inclusion in this record of the records in the two *Great Pacific Co.* cases, above related, the brief says:

In the first case, *Frank W. Smith*, a broom manufacturer located in San Francisco, stated that the merchandise in controversy, represented by Exhibits 1 and 2, was used to make push brooms and pot-scrubs. The imported material is usually received in bales of 133 pounds within which are small packages ranging in weight from 5½ to 15 pounds.

The process of treatment prior to exportation from China (the country of origin) was described by the witness Katz. The palm leaf just as it comes from the tree is first soaked in water and stripped of its pulp. Then the ribs which remain are torn from the butt end of the leaf, separated, and graded into various lengths. The lengths are again segregated, gathered into bundles and tapped on the floor so that all the ends are uniform. The pulp from the bottom and the thin ends from the top are trimmed off. The remaining sticks are packed in bundles and shipped to the United States.

To the foregoing we find it necessary only to add that, as is pointed out in the brief of appellant, the material in question is imported in lengths ranging from 16 to 29 inches.

Apparently relying on the above-quoted excerpt of appellee's brief as a summary of every salient step in the treatment of the merchandise

prior to importation, and without comprehensive review of the records before the court, the appellate court held that the treatment did not constitute a process of manufacture.

The record in the *Great Pacific Co.* case, *supra*, being a part of the record before us for our consideration, has been examined again in detail. From our review of the evidence we are convinced that the above quotation upon which the appellate court apparently relied is so succinct that it fails to present a comprehensive statement of the evidence presented. It omits many of the details in the processes of preparation which were revealed by the cross-examination of the witness Katz and of the manufacturer, Smith, which we consider relevant in determining the nature or condition of the merchandise as imported.

It is observed from the testimony of Katz that when segregated into lengths at the time of separating the fibers from their natural state the ribs are not exactly the same length but vary slightly. That is to say, when taken from the partitions the fibers are not of the exact measure of 16, 18, 22, or 28 inches. To make the exact lengths the ends are trimmed at the fine tips and also at the butts to make them uniform. In purchasing palm fiber ribs Katz always bought the finished product rather than the crude. He sells such merchandise to broom manufacturers who buy specified lengths to suit their needs. Katz admitted that the fibers are trimmed at both ends to obtain the required size and that the ribs he handles represent the finished product insofar as a broom manufacturer is concerned.

Upon cross-examination Government counsel introduced exhibits of palm fiber illustrating the various stages of separating the ribs from their native state. First, the crude palm leaf, showing the exhibit after cutting. Second, the partially stripped fiber. Third, the fibers removed from the stock and washed, dried, or seasoned, and sorted. This bundle contained fibers with untrimmed tips and the butt ends evened up by tapping upon the floor. It was marked Illustrative Exhibit 9 (record, p. 71). The witness admitted that he had seen goods of this character in Hong Kong and that the bundles contained fine tips that had not been trimmed and also with untrimmed butts. The final exhibit relative to the operations performed upon the fibers after cutting, admitted in evidence as Exhibit 11, contained fibers trimmed at both ends and cut by hand into lengths of 14 to 33 inches. The witness admitted that the fibers in such condition were the same as he sells.

G. W. Smith, a broom manufacturer who purchased merchandise from the Great Pacific Co., testified that after receiving the fibers he puts them through a comb to free the material in the heavy butt ends. That is to say, where the fibers are attached at the bottom the comb separates the same. At times the butt end also requires trimming.

Then part of the fiber is reversed so that it will be a uniform mixture and the material submerged in water to make it pliable for use in the stapling machine. After the fibers are placed in the broom they are trimmed because in doubling the material the lower part of the bend is shorter than the longest or outside bend, thus making the face of the broom irregular. The witness admitted that he always purchased his fiber cut to the specific lengths required and that it is cut on both ends.

The principle relative to the dressing or manufacture in any manner of fibers was announced in three cases by our appellate court, to wit, *Cone et al.* v. *United States*, 5 Ct. Cust. Appls. 491, T. D. 35149; *Cone* v. *United States*, 6 Ct. Cust. Appls. 263, T. D. 35477; and *Cone & Co. (Inc.)* v. *United States*, 14 Ct. Cust. Appls. 133, T. D. 41672. The first two cases considered merchandise which "were cut to lengths to be used in the manufacture of brushes and bunched ready for use," and it was there held that the material was prepared for a definite use and was ready at hand for its ultimate use in the manufacture of specified articles and in such condition it was "dressed." In the latter *Cone* case the fibers were not ready for use in their imported condition "but must be first cut and trimmed to size at both ends." There, the evidence established that after the fibers "were separated from the leaf in which they grew, except to collect them in bundles, even one end by jumping and tie the bundles" nothing had been done to them to fit them for their ultimate use. The fibers were in the same condition of preparation as contained in Illustrative Exhibit 9 of the *Great Pacific Co.* case. The court thereupon announced the principle applicable in such cases in language following:

From this somewhat cursory view of the authorities, it becomes evident that the test commonly applied to the classification of such vegetable fibers is this: If nothing has been done to the fibers except to remove them from the vegetable tissue in which they grew, to cleanse them, and to pack them into bundles for shipment, they are not to be considered as dressed; if they have been, after having been removed from their surrounding tissue, advanced by being sorted, cut into lengths, oiled, dyed, or otherwise prepared, and fitted for their ultimate use, they are to be treated as dressed. In other words, processes necessary to produce the fibers are not to be considered as manufacturing or dressing, but processes applied to the fibers themselves, advancing them in condition, are such manufacturing or dressing operations.

The appellate court in the *American Push Broom & Brush Co.* case found a striking analogy between the palm fiber described in appellee's brief and the merchandise in the case of *Cone & Co. (Inc.)*, *supra*, and that the merchandise before them in the *American Push Broom & Brush Co.* case, which was the same as the merchandise in the *Great Pacific Co.* cases, "does not differ in any material respect, either as to being manufactured or as to being dressed." Upon such a finding the court reached the conclusion that this court's decisions in the two *Great Pacific Co.* cases were not sound.

For purposes of distinguishing the merchandise in the latter *Cone* case and the palm fibers in question before us here, we think it advisable to quote from the descriptions thereof as noted in the respective decisions.

In *Cone & Co. (Inc.)* v. *United States*, 14 Ct. Cust. Appls. 133, T. D. 41672, at page 135, the condition of the fibers and the method of their preparation is described as follows:

\* \* \* In thus preparing it for sale, the leaf is cut from the tree and the usable part removed from the balance of the leaf by cutting; while green, the pattal is then pounded to free the fibers from the pulp. These partially removed fibers are then hackled by means of a crude device consisting of a number of long, sharp nails embedded in a board, the fibers being drawn through these nails, by the operator, by hand. This frees the fibers from the pulp and separates them. *These fibers are then jumped and evened at one end and are tied into bundles by means of some of the fibers, each bundle being about 3 inches in diameter. They are then baled for export, without further processing. The fibers in the G U and V F C grades are not separated for length but are bundled and baled as they come from the plant; the J V grade is divided into three classes, the long bundles being known as J V I, the medium length bundles as J V II, and the short bundles as J V III, each class being baled separately.*
\* \* \* The fibers are used for broom and brush making. *As imported, they can not be so used, but must be first cut and trimmed to size at both ends,* \* \* \*. [Italics not quoted.]

In the case of *Great Pacific Co.* v. *United States*, T. D. 44580, 59 Treas. Dec. 207, the process necessary to produce the fibers to the condition as imported is described as follows:

\* \* \* After stripping, the ribs in the different receptacles are gathered into bundles and the butt ends are tapped on the floor, \* \* \* *the very thin ends are then trimmed off and also where pulp is attached to the butt ends it is cleaned off,* \* \* \* *the thin ends are cut off after the ribs are in the bundle, that is to say the whole end of the bundle is cut off evenly,* and probably it is cut in such a way that it corresponds to the prescribed length of the bundle. \* \* \*.
\* \* \* after the tapping process in order to remove the short lengths and the long lengths, the ribs were not, as a matter of fact, the same lengths; that they were not the exact length of 16 inches, 18 inches, or 29 inches, and that they were trimmed to make them uniform. \* \* \* *that it was necessary to cut them at both ends in order to get the prescribed length, and the portion of the bundle trimmed would average from 50 to 75 per centum of the ribs therein.* \* \* \* that one end of the bundle of ribs is trimmed to get off the fine ends and the other end to remove the pulp, and *this is all done incidentally for the purpose of producing bundles of ribs which are desired by manufacturers of brushes for use in the manufacture of their different grades.* [Italics not quoted.]

It is apparent from a reading of the foregoing descriptions that the fibers in the *Cone* case, *supra*, were not cut to exact lengths, nor trimmed upon either end; that the G U and V F C grades contained fibers of various lengths; and that the J V grades were of three lengths as produced from nature. Before use by a manufacturer of brushes all grades were required to be cut to size at both ends. The fibers in the *Great Pacific* case, however, after reaching the condition of

the G U, V F C, and J V grades were thereafter trimmed at the very fine ends and the butt ends and so cut that the bundles contained the exact lengths desired by the manufacturer in the production of brooms and brushes. Any further processes upon the fibers after reaching the broom manufacturers were necessary steps in the manufacture of brooms and not processes applied to the fibers themselves. Thus, in our opinion, there is a material difference between the fibers in the *Great Pacific* cases and the fibers the subject of decision in the *Cone* case, *supra*, and when the court stated that the fiber in said cases "does not differ in any material respect, either as to being manufactured or as to being dressed" it was under a misapprehension of the facts, apparently caused by incomplete and misleading statements of counsel upon both sides.

In the *American Push Broom & Brush Co.* case, *supra*, the court made the following statement in reference to the various *Cone* cases:

\* \* \* It must be clear that we regarded the *Cone & Co. (Inc.)* case, *supra*, distinguishable from the earlier *Cone et al.* and *Cone* cases, *supra*, *but even if there be deemed to be a conflict between the first case and the last two, the decision in the first* [referring to the Cone case reported in 14 Ct. Cust. Appls. 133] *being latest in point of time should be followed.* [Italics not quoted.]

If the above-quoted language denotes a change in the principle announced in the earlier *Cone* cases and the appellate court now holds that processes applied to the fibers themselves, after being separated from their surrounding tissue, are not to be regarded as "dressing" the material, then this court, under such a construction, was properly reversed in following the earlier *Cone* cases, where fibers cut to the exact length required in the manufacture of brooms were held to be "dressed or manufactured." We do not believe, however, that there is a conflict between the appellate court's decision in the latter *Cone* case and in the first *Cone* cases, in view of the fact that in the latter case the opinion refers with approval to the holding in the previous cases, that where the crude fiber had been sorted or graded and cut to a definite length which fitted it for use in the manufacture of a particular type of broom, it was dressed or manufactured. Therefore the appellate court's decision was apparently based upon a question of fact as to what was done with the fibers to place them in condition as imported. If the court was of the opinion that the fibers are actually in a crude condition, even though cut to the exact length ready for use of the manufacturer, and that this court, in deciding otherwise, improperly weighed the evidence, then the evidence produced here to establish that the fibers have been advanced from their crude condition to fit them for their ultimate use is quite material to the case.

In the *Great Pacific* case the Government failed to present any evidence and relied principally upon the cross-examination of the

importer's witnesses to establish the character and condition of the imported merchandise. In the case at bar the Government examined five expert witnesses and introduced several exhibits of palm fiber illustrating the various stages of manufacture in the production of the fibers from the palm leaf to its crude state, and the steps necessary after the production of the fibers to prepare them for manufacture into brooms. The witnesses who testified in the case before us are men of long experience in handling the fibers and the Government has here presented a case which is explanatory of the difference between palm fibers imported in a crude condition and those imported in a state fitted for their ultimate use.

The Government's first witness was one Herman A. Steiert who manufactures and prepares fibers from their crudest state to the condition ready for use in the manufacture of brooms and brushes. He testified relative to the exhibits in the cases and through him several illustrative exhibits were introduced, explanatory of the processes necessary to prepare the fibers for use in the manufacture of brushes and brooms. His testimony is substantially as follows:

Exhibit 1 herein is comparable to the merchandise he prepares for use in the manufacture of brooms and is processed from the crude palmyra fiber.

Illustrative Exhibit A is such palmyra fiber in its crude form in the condition as taken from the stalk and as imported into the United States for further processing.

Illustrative Exhibit B represents the first sorting process, the fiber being sorted into three different grades according to quality.

Illustrative Exhibits C–1 to C–16 represent the fibers after they have been graded for quality, run through a comb for the purpose of straightening and removing broken pieces and pith, and passed through a sizing machine. The sizing machine is composed of a series of rollers adjusted to various lengths and set at an angle. The fibers are passed through the machine along a belt at the base in such a manner that they come in contact with the longest rollers first. This first set of rollers catch and eject the longest fibers. This means of sorting is continued in succession to the various lengths until the fibers have been sorted into 16 different lengths. In making these assortments as to lengths, only one of the three quality grades is fed into the machine at a time. There are 16 assortments for size for each of the three grades that are taken from the crude palmyra fiber. Thus there are in all 48 possible assortments in one bundle of the crude fiber.

Illustrative Exhibit D is the fibers after sorting and cutting to size in such a manner as to give the least possible waste. After so cutting to size and bundled, the bundles are then trimmed at each end to eliminate rough straw at the flag end and the rough pith at the butt

end. Exhibit D is a finished product and is comparable to Exhibit 1 in the case at bar.

Illustrative Exhibit E represents fibers imported by the witness which, at the time of importation, have been processed to the same finished condition as Illustrative Exhibit D.

Illustrative Exhibit G is representative of the palm fiber imported by the witness which is comparable to the palm fiber in Exhibit 10. It has been cut to lengths, graded to texture and quality, and in its imported condition is ready to be manufactured into push brooms and street brooms.

Exhibit 10 is a sample of the merchandise the subject of importation in the case of the *Great Pacific Co.* v. *United States*, T. D. 44580.

The Government's second witness, T. A. Unsworth, has been engaged in the business of handling vegetable fibers like those at bar for 45 years and whose company has engaged in the preparation of fibers for use in brooms. He testified that he imports fibers like Exhibit 1 and knows how they are prepared in India. That he has prepared the fibers in the United States and that his process of preparation is very similar to that of the previous witness. In his process he refines the fibers, cleanses them, removes the pulp, and cuts the fibers into lengths suitable for their ultimate use. During the past 6 or 8 years imported goods have been so well prepared and the price so low that he has not specialized in the preparation but imports the material ready for use in lengths of 12, 14, 16, 18, 20, 22, and 24 inches. The fibers so imported are shipped to the consumers in exactly the same condition as imported. The merchandise that he now imports is comparable to Exhibit 1. He further testified that there are various qualities of fibers that are used in brooms manufactured for different purposes and that he imports the quality desired and ships it directly to the consumer. That he has observed such fibers taken by the consumer directly from the bales and put into brushes or brooms. Exhibit 1, in his opinion, represents fibers ready for manufacture into brooms and Exhibit 10 consists of fibers that have been graded for the purpose of use in a push broom or upright broom and with no further process necessary before manufacture. In his opinion Illustrative Exhibit A is the type of fiber from which the fiber in Exhibit 1 is produced, and in the condition appearing in the exhibit is not fit for manufacture into any article.

The Government's third witness, William Hertzberg, is a manufactuer of brushes and brooms and testified that in the manufacture of upright brooms he used merchandise like Exhibits 1 and 10 and not a heavy grade like Exhibit D. That he used Exhibit 1 in manufacturing just as it is when imported. That it is necessary that the fibers used be uniform in quality and grade so that they can be fed properly into the machine. When shown Illustrative Exhibit A he

testified that he could not use it for any purpose as it is not cut to size nad not ready for use.

Mr. Theodore C. Kyle of the Fuller Brush Co., was the Government's fourth witness and testified that material like Exhibit 1 is ready for use in its imported condition in the manufacture of brushes. That it is essential that the fibers be uniform in length and texture such as the fibers in Exhibit 1. In his opinion Exhibit D is processed to the same extent as Exhibit 1 and is fit for use in the manufacture of brooms. Illustrative Exhibit A, on the other hand, would be of no use to a manufacturer of brushes, without further processing.

The Government's last witness, R. A. Paisley of the Ox Fibre Brush Co., testified that he uses fiber like Exhibits 1 and 10 in the manufacture of brooms. That the fibers are uniform in texture and the ends are uniform. Upon inspection of Illustrative Exhibit A he testified that brooms could not be produced from such fibers because they are not graded, nor cut to a specified length, and are uneven in size and texture.

Plaintiff produced two witnesses in rebuttal. One George B. Heyen testified that he was a manufacturer of fiber brooms and manufactures articles out of material similar to Exhibit 1. That before manufacture the bundles are laid out and combed, which is performed to separate the fibers and soften the bundle to make it more workable. In such combing nothing is done to the fibers themselves. The bundle containing the fiber is matted down when received and the combing operation is for the purpose of loosening it. He was of the opinion that Exhibit 1 is representative of the type of merchandise he imports but is cleaner and more uniform.

Witness A. Gall testified for the plaintiff that he imports and sells merchandise like Exhibit 1 to municipalities and also to brush and broom manufacturers. The manufacturers to whom he sells put the fibers through a comb to segregate the same when they have become stuck together with the pressure of the bale and he has also seen the combing operation in the various factories.

In rebuttal the Government recalled witness Unsworth who testified that he had been in the same factories as the previous witness. He further stated that he had seen the fibers handled from the time they came into the plant until they were made into brooms. That the process is as follows: The bales are opened and soaked overnight and then simply stapled into a broom without any combing or any preparation of any kind. He has seen the combing device described by the previous witness. That it consists simply of some points in a block of wood. It is usually used after the broom is already finished. The strands of the fiber are dragged through the comb in order to straighten out any tangled stock in the broom. The brooms after manufacture are put through an automatic trimmer that trims the extra long strands

but that the material as received is so uniform in length when plugged into the block the automatic machine merely trims off a few hairs of infinitesimal quantity.

From the foregoing testimony and from a review of the testimony and evidence in the incorporated cases, it is clear to us that the palmyra fiber stalks, the subject of the importation herein, are not in a crude condition. They have been sorted as to size and as to quality. They have been cut to lengths at both ends and bundled ready for use in the manufacture of brooms without any further processing of the fibers becoming necessary. Illustrative Exhibit A represents palmyra fibers after separation from their surrounding tissue, and it was such product that was the subject of decision in the case of *Cone & Co. (Inc.)* v. *United States*, 14 Ct. Cust. Appls. 133, *supra*. Any further operations upon such fibers are in furtherance of their manufacture into brooms. In the light of the testimony produced, Exhibit 1 demonstrates palmyra fibers which have been advanced from their crude condition through several processes preparatory for their use in the manufacture of brooms. Clearly the merchandise before us here and the merchandise the subject of the cases incorporated are upon all fours with the merchandise the subject of decision in the case of *Cone et al.* v. *United States*, 5 Ct. Cust. Appls. 491, T. D. 35149, and therein held properly dutiable as a nonenumerated manufactured article.

We are not unmindful that our appellate court in the *American Push Broom & Brush Co.* case reversed this court and held that the merchandise was free of duty under paragraph 1684. We followed that decision in the *Balfour Guthrie* case, Abstract 40596, incorporated herein, because of our deference to the decision of the appellate court, although not in accord with the holding therein. Here a new case arises involving the same question and the identical samples as representative of the merchandise. We now have before us not only the evidence and exhibits in the previous cases but other convincing new evidence on the part of the Government that confirms the view previously taken by this court. In the circumstances, we feel that the *American Push Broom & Brush Co.* case should not be held as a precedent for the classification of this class of palmyra fiber.

For the reasons stated, judgment will be entered in favor of the Government.