(C. D. 1537)

F. BURKART MANUFACTURING COMPANY *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 24, 1953)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*John J. McDermott* and *William J. Vitale*, special attorneys), for the defendant.

Before EKWALL and JOHNSON, Judges

JOHNSON, Judge: The merchandise at issue in this case consists of istle or Tampico fiber, imported from Mexico in lengths from 11 inches up to 24 inches. Duty was assessed thereon at the rate of 10 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930, as modified by the Mexican Trade Agreement, T. D. 50797, providing in part as follows:

> Articles manufactured, in whole or in part, not specially provided for:
> Istle or Tampico fiber, dressed or manufactured, 10% ad valorem.

The plaintiff claims that the merchandise is entitled to free entry under paragraph 1684 as follows:

> PAR. 1684. Grasses and fibers: * * * istle or Tampico fiber, * * * and all other textile grasses or fibrous vegetable substances, not dressed or manufactured in any manner, and not specially provided for.

It is further claimed that the merchandise is free of duty under paragraph 1722, providing for—

> PAR. 1722. Moss, seaweeds, and vegetable substances, crude or unmanufactured, not specially provided for.

Under other claims in the protest, not waived or abandoned, but not stressed, the merchandise is claimed dutiable at 7½ per centum ad valorem as waste, not specially provided for, under paragraph 1555 of said act, as amended by the trade agreements with the United Kingdom and Mexico, T. D. 49753 and T. D. 50797, respectively.

The official samples of the merchandise, 11 inches in length, were admitted in evidence as exhibits 1 and 3; those 19 inches in length were admitted in evidence as exhibits 2 and 5; and that 13 inches long was admitted in evidence as exhibit 4.

Three witnesses testified for the plaintiff. L. M. Argueso is a fiber and wax importer, president of M. Argueso & Co., Inc., and in charge

of purchasing and selling istle fibers. The witness had lived in Mexico in the istle district on the ranches, and he had seen the fiber produced, sorted, and baled. Besides, the witness had made 67 trips to Mexico. During the war, he represented the Defense Supply Co., a United States Treasury procurement, was on the advisory committee, War Production Board, and a consultant to the Board of Economic Warfare, and was in charge of examining a great deal of istle fiber.

The second witness for plaintiff, Leonard E. Hehl, was vice president of F. Burkart Manufacturing Company, the plaintiff herein, and in charge of the Baltimore plant. He had been in the business of dressing fibers for the brush and broom industry since 1927. He bought crude fibers for processing and sold the dressed or manufactured products.

The third witness for the plaintiff was Ralph H. Poirier, who was an importer and seller of all sorts of fibers, brush fibers, horsehair, and bristles. He was formerly with A. A. Krejtman, Inc., as vice president in charge of sales of fibers, including istle fibers. Before that, he was with E. B. and A. C. Whiting Co. in Burlington, Vt., the largest processor of brush fibers in the world. When with that firm, he was an officer and director for 20 years.

One witness, William M. Greene, testified on behalf of the Government. He was employed by the firm of Frederick H. Cone & Co., Inc., importer of bristles, horsehair, and fibers. He sold fibers to brush manufacturers, including istle fiber imported from Mexico. This witness had visited Mexico 8 or 10 times, the istle fields and the fiber dresser establishments 5 or 6 times, and had observed the operations used in obtaining istle fibers and fitting them for shipment to the United States.

The plaintiff's witnesses testified that the fiber is taken from the heart of a plant of the lechuguilla family; also, that it was a type of cactus of the agave family. It is contained in a cluster of leaves in the plant, which leaves are very prickly on the sides, and each has a large thorn at the terminal end of the leaf. These hearts of the cactus are gathered by the Indians who remove the outside of the leaf and the pulpy part. This is scraped off, while the plant is still in a fresh state, without injury to the fiber. Once the leaf is allowed to dry, it is impossible to remove the pulp without destroying the fiber. Such operations are a part of the decortication process. After the fiber is removed, it is allowed to dry in the sun. Then it is sold at a trading store or taken to the ranch house, where it is sorted to length, the dark or stained fibers removed, and the adhering pulp removed where the Indians had failed to clean the fiber properly. The thorny tips and curly butt ends are cut off, and the fibers are bundled. Such trim-

ming is all crudely done, but it is essential, not only to present a better appearance, but so that it may be more economically baled for shipping purposes.

The plaintiff's witnesses were of the opinion that the rough sorting and cutting does not advance the fibers toward their final use in brush making but constitute a part of the decortication process, particularly for the reason that the fibers are not used in the condition received but have to undergo further dressing, cleaning, and trimming to size. The witnesses also testified that such fibers in the condition imported were sold to fiber dressers who prepare them for sale to brush manufacturers.

When received at the plant of the plaintiff, the fibers, in the condition of the merchandise in question, are cut to specific lengths by trimming off the flag and butt ends in order to minimize or reduce the short fibers and to get as solid a type as possible. Then, half the quantity in the bundle is reversed so that when it is put through the combing and mixing machines it comes out in cylindrical form, or solid at both ends. The next step is to give the material an emulsion treatment or spraying with a blended oil. Then, it is conveyed to the mixing or combing machines. Those machines are so arranged that, as the material passes through the machine, hackle combs on each side go over the length of the material, passing through the machine by a distance of about three-quarters of an inch over half its length. When the comb of one side has gone through the material, the comb on the other side comes along and goes over the center. Thus, the bundle receives a complete combing over the center of the stock. Later, it is taken off and put on frames and conveyed to the finishing section, where it is drawn through finishing combs or finishing hackles. It is then bundled by placing into paper tubes. When so bundled, it is conveyed to the final cutting department, where the end is first trimmed so as to give a good solid cut. Thereafter, it is put into a machine where the gauge is set so that it may be cut into such smaller sizes as are desired. Finally, it is packed in cartons and marked ready for shipment. The waste from the trimming operations, figuring from the bale as received to the finished stock, is about 33 per centum. In other words, for every 100 pounds of finished goods produced in cartons, about 130 to 135 pounds out of the bale of the crude or raw material are required. The witnesses were of the opinion, from their experience, that the fibers in the condition imported were of no value to the brushmaker without being subjected to the dressing processes. In examining the samples in evidence, plaintiff's witnesses were all of the opinion that the merchandise had not been dressed or manufactured in any way.

The Government witness, on inspection of the samples, testified that his firm imports very little of the tails, as he characterized the

samples, but testified that those were sold in Europe. He had, however, seen the merchandise produced in Mexico on five or six occasions some 10 or 12 years ago. He had watched the gatherers scrape the pith out of the fibers and had seen them bundle the fibers and send the articles down to the collecting stations. When roughly bundled, the witness testified, the fibers are taken down to the collecting stations where the fiber dressers obtain the bundles and dress the fibers. When these fiber dressers receive the fibers, they classify them roughly, according to length and color, and hackle them, either on the machine or by hand, to straighten out the fibers, and put them in condition to be either sold or processed further. A machine-dressed sample was admitted in evidence as illustrative exhibit A. This hackling he had seen done by the fiber dressers. They cleaned the remainder of the waste out of the fibers and also the flimsy materials as well as the remaining pith. The witness was of the opinion that exhibits 1 to 5, inclusive, had been hackled and combed, but that illustrative exhibit 6, admitted in evidence on behalf of the plaintiff as an example of crude fiber, had not been hackled and combed. He was also of the opinion that hackling and combing tended to prepare the fibers for their ultimate use. The Government witness admitted that his firm was not in the business of dressing fibers, but purchases are made from fiber dressers in Mexico of dressed fibers, and sales are made in this country to brush manufacturers of the fibers so purchased. He also admitted that his firm had not imported merchandise like exhibits 1 to 5, except one bundle for sampling purposes, and had never imported any like illustrative exhibit 6. He was of the opinion, however, that exhibits 1 to 5 had been hand dressed.

Mr. Argueso was recalled to the stand by counsel for the plaintiff. He explained the hackling operations given to istle fiber, prior to obtaining the crude fiber, as the usual process used by the peon gatherer of the fiber before he brings it to market. When they do not hand hackle it, they shake or beat it out, separating the fibers from the pulpy matter. The witness had never known any type of istle fiber that is not shaken out against a jagged stone or rock, or some other object, for the purpose of eliminating the pulp. A crude comb made out of nails may be used to draw the fiber through so as to eliminate the hard vegetable substances adhering to it. The witness examined a portion of fiber taken from exhibit 5 and found fibers still stuck together with a green pulpy mass on it and also dirt, and he was of the opinion that any fiber in such condition had not received any extensive combing.

The plaintiff contends that the processes applied to the fiber in question were nothing more than such as were necessary to obtain it by itself, free from some of the useless waste material; that the elimi-

nation or the unprecise cutting off of the extraneous waste ends does not constitute a dressing or manufacturing operation; and that the material is nothing more than crude, undressed, and unmanufactured istle fiber. It is further contended that the operations performed upon the imported fiber have not advanced it toward its ultimate use in the manufacture of brushes, but it is still crude. It is also pointed out that witness Hehl and Poirier stated that istle fiber imported during the pendency of the Tariff Act of 1922 was much more further advanced and in better condition than the fiber here in question because of the better workmanship of the peons at that time, yet it was admitted free of duty as undressed fiber.

The Government contends that the istle fibers are obtained by themselves when they are decorticated, that is, when completely separated from the leaf and the pulp, and the sorting, according to the butt and flag ends, as to quality in lengths and color of fibers, plus the bundling and trimming, are all processes applied to the fibers themselves, advancing them in condition. Therefore, they come within the classification of dressed or manufactured fibers in paragraph 1558, *supra*, citing *Great Pacific Co.* v. *United States*, 59 Treas. Dec. 207, T. D. 44580, wherein this court held that the processes applied to ribs of palm leaves, derived from soaking palm leaves in water and stripping the pulp from the ribs, and then sorting them into bundles of proper lengths and trimming, were beyond the state required to remove the ribs from the vegetable tissue in which they grew, and that to cleanse and to pack them into bundles for shipment removed them from the provision in paragraph 1582 of the Tariff Act of 1922 as fibers, not dressed or manufactured in any manner. Unfortunately, however, that decision was, in effect, reversed by the Court of Customs and Patent Appeals in the case of *American Push Broom & Brush Co.* v. *United States*, 25 C. C. P. A. (Customs) 248, T. D. 49391.

In the *American Push Broom & Brush Co.* case, *supra*, the court relied and followed its ruling in the case of *Cone* v. *United States*, 14 Ct. Cust. Appls. 133, T. D. 41672, where it distinguished from fibers, not dressed or manufactured in any manner, dressed or manufactured fibers, in language following:

> * * * If nothing has been done to the fibers except to remove them from the vegetable tissue in which they grew, to cleanse them, and to pack them into bundles for shipment, they are not to be considered as dressed; if they have been, after having been removed from their surrounding tissue, advanced by being sorted, cut into lengths, oiled, dyed, or otherwise prepared, and fitted for their ultimate use, they are to be treated as dressed. In other words, processes necessary to produce the fibers are not to be considered as manufacturing or dressing, but processes applied to the fibers themselves, advancing them in condition, are such manufacturing or dressing operations.

The court held that sorting the palm ribs into lengths, and trimming, cleansing, and packing them into bundles for shipment were not dressing or manufacturing processes.

The preponderance of evidence before the court in this case fully establishes that the operations performed on the istle fibers in question did not advance them toward their ultimate use, and that nothing was done to the fibers, except to remove them from the vegetable tissue in which they grew, cleanse, and pack them in bundles for shipment, the sorting into various lengths and cutting the ends not being considered an advancement within the meaning of the statute to the extent of being dressed or manufactured.

For the reasons stated, judgment will be entered in favor of the plaintiff holding that the istle fibers in question are not dressed or manufactured in any manner and, therefore, entitled to free entry under paragraph 1684 of the Tariff Act of 1930. The collector, therefore, will reliquidate the entries and refund all duties taken thereon, in accordance with law.