(C. D. 1551)

## J. E. BERNARD & Co., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided October 22, 1953)

*Wallace & Schwartz* and *Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Edward N. Glad* of counsel) for the plaintiff.

*Warren E. Burger*, Assistant Attorney General (*Dorothy C. Bennett* and *John J. Antus*, special attorneys), for the defendant.

Before EKWALL and JOHNSON, Judges

JOHNSON, Judge: This is a protest against the collector's assessment of duty on merchandise, described on the invoice as "palm fibre," at 20 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930 as articles manufactured in whole or in part, not specially provided for. It is claimed that the goods are entitled to free entry under paragraph 1684 of said tariff act as fibrous vegetable substances, not dressed or manufactured in any manner, and not specially provided for.

The pertinent provisions of the tariff act are as follows:

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

PAR. 1684.  Grasses and fibers: Henequen, sisal, manila, jute, jute butts, kapok, istle or Tampico fiber, New Zealand fiber, sunn, maguey, ramie or China grass, raffia, pulu, and all other textile grasses or fibrous vegetable substances, not dressed or manufactured in any manner, and not specially provided for.  [Free.]

The instant merchandise was imported from Hong Kong and was entered at the port of Chicago on October 23, 1939.  The entry was liquidated on December 13, 1939, and the protest filed on January 12, 1940.  The case was first heard on December 9, 1940, at Chicago, and, after some testimony was taken, it was continued until the next docket.  Thereafter, the case was continued from time to time, partly because of the war, until September 30, 1952.  At a hearing on that date in Chicago, counsel for the plaintiff stated:

* * * this case was partially tried quite a long time ago and we have been trying ever since that time to obtain further evidence, but no further evidence is available and we therefore submit.

The Government also submitted, and time for filing briefs was allowed, the last being filed on June 26, 1953.

At the original hearing, two witnesses were called by the plaintiff. Albert Hunziker, president of Mid West Trading Co., importer of the instant merchandise, testified that he had been with that firm for 3 years and had been in the business of importing palm and palmyra fiber for 15 years.  He stated that palmyra fiber is dark in color and is grown in India, while palm fiber is light colored and is produced in China.  He was familiar with the imported merchandise and stated that one item consisted of 120 packages of palm fiber, each containing 2 bales weighing 133⅓ pounds each, and that the other item consisted of 60 packages of palm fiber, each containing 1 bale weighing 133⅓ pounds.  He said that the bundles of fibers were approximately 14 inches long but might vary a fraction of an inch.

A sample of the involved merchandise was introduced into evidence as plaintiff's exhibit 1.  It consists of a bundle of fibers, approximately 14 inches in length.  The fibers are clean, straight, and of a uniform thickness and texture.  They all appear to have been cut at the butt ends and most of them at the flag ends also.  They are not perfectly uniform in length, varying by a fraction of an inch.

Witness Hunziker further testified that his company imports such merchandise to sell to broom and brush manufacturers as raw material and that the instant shipment was sold to Furst McNess Co. The witness said that he had seen that firm manufacture brooms and described the process as follows: The fibers are selected as to thickness, are cleaned, cut to a certain length, and made into a broom.  After the broom is made, it is trimmed again.  The company makes stiff brooms which are used in gasoline stations, factories, and railroads, and, according to the witness, fine fibers cannot be used for that purpose.

Arthur P. Seitz, manager of the brush and broom factory of Furst McNess Co., testified that his firm manufactures brooms, brushes, mops, dusters, and an entire pharmaceutical line. He stated that he was familiar with the manner in which the merchandise purchased from Mid West Trading Co. was used and described the process as follows:

When we get the fibre, that is 133 pounds, the fibre comes in to us, it is not always the length that we like to have it, so we take the fibre and clean it as best we can, and segregate the fine, medium, and coarse fibres, and then they are made into each respective broom.

\* \* \* \* \* \* \*

Sometimes the fibres have to be cleaned, and sometimes they have to be steamed. In cleaning, some of the original dirt is on the fibre, and sometimes the fibre comes in to us curled, and that must be steamed.

The witness added that the fiber from this particular shipment was made into brooms after steaming, straightening, and segregating the fine, medium, and coarse fibers. The small fibers went into another type broom, and the longer ones had to be cut. He added that these fibers are known in the trade as 14-inch fibers and that his firm makes different sized brooms, including 14-inch brooms.

Neither of the witnesses had been in China nor seen the fiber prepared for shipment.

Plaintiff claims that the evidence herein establishes *prima facie* that the merchandise was in a crude state at the time of importation because an additional process of preparation or manufacture was necessary in order to fit it for its use. Defendant contends, on the other hand, that since there is no evidence as to the manner in which the fiber was produced and prepared for shipment in China, the record is insufficient to overcome the presumption of correctness attaching to the collector's classification.

The merchandise herein cannot be classified under paragraph 1684 of the Tariff Act of 1930 unless it was not dressed or manufactured in any manner at the time of importation. The rule to be applied was set forth in *Cone & Co. (Inc.) v. United States*, 14 Ct. Cust. Appls. 133, T. D. 41672, as follows (p. 138):

\* \* \* If nothing has been done to the fibers except to remove them from the vegetable tissue in which they grew, to cleanse them, and to pack them into bundles for shipment, they are not to be considered as dressed; if they have been, after having been removed from their surrounding tissue, advanced by being sorted, cut into lengths, oiled, dyed, or otherwise prepared, and fitted for their ultimate use, they are to be treated as dressed. In other words, processes necessary to produce the fibers are not to be considered as manufacturing or dressing, but processes applied to the fibers themselves, advancing them in condition, are such manufacturing or dressing operations.

In that case, it was held that palmyra fibers which had been separated from the leaf, collected into bundles, evened at one end, and

tied by means of some of the fibers were entitled to free entry as unmanufactured and undressed fibers under paragraph 497, Tariff Act of 1913, or paragraph 1582, Tariff Act of 1922. The court said that the fibers, as imported, could not be used in broom and brush making, since they must first be cut and trimmed to size at both ends, and dyed, where dyeing is desired.

Following that case, it was held in *American Push Broom & Brush Co.* v. *United States*, 25 C. C. P. A. (Customs) 248, T. D. 49391, that certain palm leaf ribs were entitled to free entry under paragraph 1684 of the Tariff Act of 1930 as fibrous vegetable substances, not dressed or manufactured in any manner. The record in the cases of *Great Pacific Co.* v. *United States*, 59 Treas. Dec. 207, T. D. 44580, and *Great Pacific Co., Inc.* v. *United States*, 64 Treas. Dec. 590, T. D. 46757, had been incorporated, and the court described the process of preparation of the merchandise by quoting from the Government's brief as follows (p. 251):

> In the first case [*Great Pacific Co.* v. *United States, supra*], *Frank W. Smith*, a broom manufacturer located in San Francisco, stated that the merchandise in controversy, represented by Exhibits 1 and 2, was used to make push brooms and pot-scrubs. The imported material is usually received in bales of 133 pounds within which are small packages ranging in weight from 5½ to 15 pounds.
>
> The process of treatment prior to exportation from China (the country of origin) was described by the witness Katz. The palm leaf just as it comes from the tree is first soaked in water and stripped of its pulp. Then the ribs which remain are torn from the butt end of the leaf, separated, and graded into various lengths. The lengths are again segregated, gathered into bundles and tapped on the floor so that all the ends are uniform. The pulp from the bottom and the thin ends from the top are trimmed off. The remaining sticks are packed in bundles and shipped to the United States.

In a subsequent case in this court, *Balfour, Guthrie & Co., Ltd.* v. *United States*, 4 Cust. Ct. 300, C. D. 348, it was stated that the above quotation, upon which the appellate court relied, failed to present a comprehensive statement of the evidence. The court then set out the following additional facts shown by the evidence in the *Great Pacific Co.* case (p. 303):

> It is observed from the testimony of Katz that when segregated into lengths at the time of separating the fibers from their natural state the ribs are not exactly the same length but vary slightly. That is to say, when taken from the partitions the fibers are not of the exact measure of 16, 18, 22, or 28 inches. To make the exact lengths the ends are trimmed at the fine tips and also at the butts to make them uniform. In purchasing palm fiber ribs Katz always bought the finished product rather than the crude. He sells such merchandise to broom manufacturers who buy specified lengths to suit their needs. Katz admitted that the fibers are trimmed at both ends to obtain the required size and that the ribs he handles represent the finished product insofar as a broom manufacturer is concerned.

The records of the prior cases involving palmyra fiber were incorporated in the *Balfour, Guthrie* case, and additional evidence was offered. The court concluded that the imported fibers had been sorted as to size and quality, cut to lengths at both ends, and bundled ready for use in the manufacture of brooms, without any further processing of the fibers being necessary. It was held, therefore, that the merchandise was not entitled to free entry under paragraph 1684 of the Tariff Act of 1930.

Another case on this subject is *Lins Broomcorn Company* v. *United States*, 22 Cust. Ct. 47, C. D. 1157, which involved bear grass or palmilla, a coarse, fibrous vegetation, resembling the ribs of palm leaves. The evidence established that the merchandise was gathered by grasping small groups of the grass in the hand and severing with a machete. After cutting, the grasses were placed on boards 18 inches long and the tops removed. The merchandise was then tied into bundles and exported to the United States to broom manufacturers. The witness testified that he had seen brooms made from such material but never had observed the process of manufacture. The court held that the imported fibers were entitled to free entry under paragraph 1684 of the Tariff Act of 1930, pointing out that there was nothing to indicate that the fibers were cut to the exact length of 18 inches upon order of the broom manufacturers; that the sample showed lengths ranging from 17 to 18½ inches; and that the evidence did not establish that the bundles contained a uniform size of fiber suitable for the manufacture of brooms, without further processing.

In the instant case, the evidence fails to establish what was actually done to produce the merchandise and prepare it for shipment. However, the sample itself indicates that the fibers were cut at both ends and were graded or sorted in some manner, so that the bundle contained fibers of approximately uniform length, thickness, and texture. The fibers are straight and not curled. Witness Seitz stated that such merchandise was known in the trade as 14-inch fibers and that his firm made 14-inch brooms. It appears, therefore, that the imported articles more closely resemble those involved in *Balfour, Guthrie & Co., Ltd.* v. *United States, supra,* than those involved in *Lins Broomcorn Company* v. *United States, supra.* Evidence of the treatment of the merchandise after importation is not of sufficient probative value by itself, and in view of the sample, to establish that the fibers had not been dressed or manufactured in any manner prior to importation.

In view of the record presented, we hold that the plaintiff has failed to establish that the articles are properly classifiable as fibrous vegetable substances, not dressed or manufactured in any manner, entitled to free entry under paragraph 1684 of the Tariff Act of 1930, as claimed. Judgment will therefore be entered in favor of the Government.